David T. Gibbons, J.
The defendants are charged Avith the crime of murder under section 125.25 of the revised Penal Law.
*60 An order for separate trials, heretofore granted, directed that the trial of the defendant, William Wright, proceed first.
After the case was called for trial, and immediately prior to the selection of a trial jury, a challenge to the panel of prospective jurors, sent from the Central Jury Part, was made on behalf of the defendant, William Wright, a Negro, pursuant to section 363 et seq. of the Code of Criminal Procedure.
Matters pertaining to census and population are the subject of judicial notice. (Trustees of Union Coll. v. City of New York, 65 App. Div. 553, affd. 173 N. Y. 38.)
The court takes judicial notice that the population of Nassau County is in excess of one million and that the procedures relating to the qualification and selection of jurors set forth in article 18 of the Judiciary Law are applicable in this case.
It is his contention that, because of the insufficient number of Negroes being selected for jury duty in general, and because of discriminating practices employed by which Negroes were excluded from this particular panel of prospective trial jurors, there is not such a proper proportion of Negroes on this panel of prospective jurors, empaneled for use on this trial, as relates to the population as to afford this defendant a trial by a jury of his peers.
A hearing on this question was conducted by the court at which the only witness called was Honorable Joseph Dowler, Commissioner of Jurors of the County of Nassau.
From his testimony, the court finds that from about 300 to 400 persons from all parts of Nassau County are summoned each business day to the office of the Commissioner of Jurors for the purpose of qualifying as jurors. The names and addresses of these prospective jurors are obtained from the voter’s registry, telephone book, assessment rolls, lighting company lists and the lists of automobile owners from the Bureau of Motor Vehicles.
The Commissioner estimated that the total population of the county is about one million and a half, of which about 4% are Negro. He also estimated that after eliminating those under 21 years of age, and over 72 years of age, together with certain professional people, and women, of whom 90% claim the statutory exemption, from which it may be concluded that a rather small percentage of the total population ever serve on juries.
The Commissioner also testified, and the court finds, that no particular area of Nassau County is chosen to seek out qualified trial jurors, nor does he issue any general or specific orders to systematically exclude persons of any particular race, religion or creed from the jury rolls. Those receiving qualifying sum *61 mons are chosen by lot from rolls made up from the various lists above mentioned, and sent in equal numbers to every area of the county regardless of the concentration of whites or blacks residing there. There is no attempt to send a smaller number of summons into an area populated by more blacks than white individuals.
The qualifying procedure involves a written questionnaire to be answered by the person summoned. (Judiciary Law, § 661.) Nowhere on this paper is there any reference to race, religion or national origin.
The Commissioner of Jurors also testified, and the court finds, that although there are questions to be answered in relation to schooling and educational attainment, the answers thereto are given no weight and are not used in any way in the qualification of the prospective jurors. If the person summoned is unable to understand the questionnaire because of his not being able to read or write English, he is not accepted. Ability to read and write the English language understandably is a requisite for qualification as a juror. (Judiciary Law, § 662.)
The prospective jurors are drawn by lot when they are summoned for qualification determination, and again when they are drawn for the respective jury panels, including the one assembled for this case.
There are no records, marks or devices employed on the ballot or anywhere else to differentiate as to the race, religion, national origin, educational or socio-economic circumstances of any of the prospective jurors, and the Commissioner and his employees who perform the various tasks connected with obtaining trial jurors have no control over what persons are called for such service.
Although few persons are disqualified by reason of their inability to read and write the English language, the Commissioner testified, and the court finds, that most of those excluded for this reason are not Negroes. This appears to be a reasonable conclusion because the Negro population is small compared to the entire population of the county.
Under the facts and circumstances of this case, defendant’s . contention that he is deprived of his constitutional right to be tried by a jury of his peers because of the imbalance of Negroes on the panel of trial jurors, and because of the Commissioner of Jurors elimination of illiterates, is wholly without any legal merit since there is no evidence of any deliberate, intentional or systematic exclusion of persons of any particular race, religion or national origin. (People v. Agron, 10 N Y 2d 130; People v. Horton, 18 N Y 2d 355, 360.)
*62 As for defendant’s argument that his constitutional rights are impaired because the jury contains no illiterate or otherwise disadvantaged persons is likewise without any legal basis.
In People v. Henry (55 Misc 2d 134, 137), the rule is aptly stated as follows: “ The Federal Constitution requires only a fair jury without regard to race. It does not compel a prorata representation of all racial and religious groups (United States v. Curry, 358 F. 2d 904 [1965]). Likewise, there is no constitutional right to a jury composed of uneducated people, nor is there any right to a jury chosen from people at the lower end of the economic scale (People v. Cohen, 54 Misc 2d 873) ”. (Emphasis added.)
Both the prospective jurors summoned for qualification and those selected for this panel were chosen at random by lot and the methods and procedures hereinabove outlined, were in all respects in accord with, and compatible with the letter and spirit of the defendant’s constitutional right to a trial by a jury of his peers. (People v. Agron, supra; People v. Horton, supra; United States v. Flynn, 216 F. 2d 354, 388; Brown v. Allen, 344 U. S. 443.)
The defendant having failed to sustain the burden of proving the allegations of his challenge, the motion must be denied. (8 N. Y. Jur., Constitutional Law, §§ 59 and 77.)
It is therefore,
Ordered, that the defendant’s challenge to the selection and qualification of the entire panel of prospective jurors, and, particularly, to the selection therefrom of the panel of prospective jurors for use on this trial, is hereby denied in all respects.
At the conclusion of the hearing herein, the court made a short oral decision and stated that a more detailed decision and order in writing, will follow.
The foregoing constitutes the decision and order of the court, in writing.