Frank A. Tate, Jr., Town Justice.
Defendant, a 20-year-old man, has been charged with disorderly conduct, resisting arrest, and third degree assault. Defendant’s counsel made a timely written challenge to the panel of trial jurors pursuant to section 363 of the Code of Criminal Procedure. As alleged, the facts constituting the ground of the challenge were that 11 an examination of said ages (of the jurors) indicates, prima facie, that there has been a material departure, to the prejudice of the defendant, from the forms prescribed by the judiciary law, in respect to the drawing and return of the jury in this case in that there has been a systematic and deliberate exclusion of persons under the age 32 years.” Defendant sought a trial of the issues raised by the challenge pursuant to section 361 of the Code of Criminal Procedure.
At the December 14,1970 hearing, the District Attorney asked permission for time to enter a written reply and the same was granted. A memorandum of law was subsequently filed by the District Attorney which was in substance an exception to the challenge because of the insufficiency of the facts alleged. Assuming the facts alleged in the written challenge to be true, the court tried the sufficiency of the challenge as required by section 364. The court determined that the challenge was sufficient.
Although the prosecution did not formally withdraw" the exception and deny the facts alleged in the challenge (Code Crim. Pro., § 365), the court deemed the District Attorney’s original memorandum a sufficient denial of the facts alleged in the challenge and ordered a trial of all questions of fact pursuant to section 366. Even in the absence of an exception or denial, a hearing is proper (see People v. Powell, 21 A D 2d 789).
*114 The initial issue faced by the court was whether the defense could introduce evidence of irregularities in the selection of the list of eligible jurors or whether it was limited by section 362 to proof of irregularities relating to the ‘ ‘ drawing ’ ’ or “ return ” of the panel. The case of People v. Hetenyi (36 Misc 2d 518, affd. 277 App. Div. 310, affd. 301 N. Y. 757) held that since the word ‘ ‘ selection ’ ’ was not used in section 362, a successful challenge to a panel of trial jurors drawn for the trial of a criminal case cannot be sustained because of irregularities incident to the general selection of jurors.
On the other hand, a defendant has a constitutional right to be tried by a jury which is not the product of systematic or deliberate discrimination with respect to the compilation of the general list from which jurors are drawn. The Federal courts have made it clear that a challenge to the jury selection process raises “ very serious constitutional issues ” (Chestnut v. People of State of New York, 370 F. 2d 1, 7) and have set aside convictions where claims that the jury selection system is discriminatory have been proved (see, e.g., Whitus v. Georgia, 385 U. S. 545; Patton v. Mississippi, 332 U. S. 463).
Since a defendant has a right to a jury which is not the product of an unconstitutional selection process, he must have a remedy whereby it may be determined whether that right has been violated. In New York, the courts have not hesitated in the interest of protecting a defendant’s constitutional rights to adopt an appropriate procedure for providing a hearing which is not authorized by statute (see People v. Huntley, 15 N Y 2d 72; People v. Coffey, 11 N Y 2d 142).
Although section 231 of the Code of Criminal Procedure clearly states that, “ There is no challenge allowed to the panel or to the array of the grand jury ’ ’, there have been numerous cases in which the courts have granted hearings in order to determine the validity of the process by which lists of prospective grand jurors are selected. In most of these cases, it was alleged that the grand jury was the product of unconstitutional discrimination in the selection process (see, e.g., People v. Chestnut, 26 N Y 2d 481; People v. Dessaure, 299 N. Y. 126; People v. Henry, 55 Misc 2d 134; People v. Cohen, 54 Misc 2d 873; People v. Thomas, 53 Misc 2d 427).
Since the courts have afforded defendants a procedure whereby they may exercise their right to challenge the general selection process of grand juries, it seems clear that a similar result must be reached in the case of challenges to the general selection process of petit juries. In fact, at least one lower court has allowed a defendant to challenge the panel of prospective jurors *115 pursuant to section 363 et seq. of the Code of Criminal Procedure when the challenge was based on alleged discrimination in the selection process of trial jurors (People v. Wright, 60 Misc 2d 59).
Having determined that the defendant in the present case has a right to a hearing in which he may present proof to support his allegation that the panel of prospective jurors was unconstitutionally selected, the court has followed People v. Wright (60 Misc 2d 59, supra) in utilizing the procedures set out in section 363 et seq. of the Code of Criminal Procedure for that purpose.
At a hearing held on May 5, 1971, the defense offered into evidence the deposition of the Assistant Commissioner of Jurors for Albany County which had been previously taken by stipulation of the parties. Her testimony regarding the jury selection process was as follows. Names would be selected at random from three sources: voter enrollment books from the different towns and cities; telephone books; and city and town directories. The latter source listed people’s occupational status. If a name selected from that source had an exempted occupational status, such as lawyer, doctor or fireman, the name would be deleted at this point. As a general rule the other people selected would be sent questionnaires requiring the prospective jurors to supply certain information, including age and occupational status (see Judiciary Law, § 661). However, an exception to this rule was made for those people listed in the directories as “ students ’ ’. Since it was determined that it would be a hardship for students to serve and that “ we’re only filling up the file with people who can’t serve ”, students were not sent questionnaires. As to the people who were selected from the other sources which did not indicate occupational status, if a person returned a questionnaire stating he was a “student”, he was automatically excluded upon the same rationale as stated above.
The only witness called at the May 5, 1971 hearing was Dr. Melvin Katz, who was qualified as an expert in mathematics and statistics. The court took judicial notice of the 1964 and the 1968 census for the Town of Colonie.
Dr. Katz made a comparison study of the age characteristics of the population of the Town of Colonie with the age characteristics of the list from which jurors are drawn. At the occasion of the taking of the deposition of the Assistant Commissioner of Jurors, the age of each person on the list from which jurors are selected for the Town of Colonie was noted and this data was admitted into evidence. It can be determined that the list consisted of 1,246 names, of which only 16 represented prospective jurors of 21 to 29 years of age.
*116 The following table compares the number of people in the various age brackets that are actually on the list of jurors for the Town of Colonie to the number that would appear on a representative list of jurors.
Population No. Expected[1]
Age Group 1964 1968 No. on List 1964 1968
21-24 2300 2844 1 87 97
25-29 3064 3854 15 117 130
30-34 3982 3806 67 152 130
35-39 4772 4339 112 182 149
40-44 4411 5169 165 169 175
45-49 3862 4369 192 147 150
50-54 3315 3979 211 126 135
55-59 2756 3200 198 105 108
60-64 2135 2550 155 82 87
65-69 1474 1808 107 56 62
* Approximate results expected from fair sampling
The fourth column of the table is a description, by age, of the present roll of prospective jurors for the Town of Colonie. An observation of the table shows that there is obviously a large statistical disparity in the lower age brackets between the number of prospective jurors on the list and those numbers that would be expected from a true cross section of the eligible jurors in the population.[1] Dr. Katz performed statistical analyses on the data, which procedures the District Attorney conceded were proper, and concluded that in all probability the list was not randomly selected from the Colonie population.
Whenever a defendant attacks the jury selection process as being violative of the Equal Protection Clause of the Fourteenth Amendment, the burden is on him to prove the existence of purposeful discrimination (see, e.g., Whitus v. Georgia, 385 U. S. 545, supra; Avery v. Georgia, 345 U. S. 559). However, once a prima facie case is established, the burden shifts to the prosecution.
The Court of Appeals of this State has recently affirmed the principle that ‘11 want of proportional representation of groups not proven to be deliberate and intentional is not constitutionally offensive. ’ ” (People v. Chestnut, 26 N Y 2d 481, 487, supra, *117 citing Froessel, J. in People v. Agron, 10 N Y 2d 130, 151, citing Fay v. New York, 332 U. S. 261, 269; Atkins v. Texas, 325 U. S. 398, 403). The court in Chestnut (p. 489) held that statistical disparity without more is insufficient to make a showing of intentional and systematic discrimination. ‘ ‘ Although a statistical disparity may be used, along with other factors, as evidence in support of a claim of purposeful discrimination, it is not ground, in itself, for concluding that a jury is impermissibly constituted.” But see, United States v. Butera (420 F. 2d 564, 569, supra) where it was stated that, “while ‘ purposeful discrimination ’ may connote an element of bad faith in ordinary usage, the term has not been so limited by the Supreme Court; rather, the breadth with which the term has been used by the Court indicates that purposeful discrimination exists whenever significant unexplained disparities exist.”
Before proceeding with the discussion of whether the defendant has met his burden of proof in the present case, it should be noted that it has been held that young adults constitute a cognizable group for purposes of defendant’s prima facie case (United States v. Butera, supra, p. 570).
Since this court is bound to follow the holding in Chestnut (26 N Y 2d 481, supra), in order to establish a prima facie case the defendant herein must have introduced other evidence beside that of statistical disparity. The court concludes that in this regard the defendant has met his burden. The testimony of the Assistant Commissioner of Jurors despite her apparent benign motivation has shown that1 ‘ students ’ ’ have been intentionally and systematically excluded from the jury lists, as a class. Since most students fall in the lower age brackets, it seems reasonable to conclude that young adults in the age group 21 to 32 would be the group most adversely affected by this exclusion. The exclusion of students would also tend to at least partially explain the gross statistical disparity which the case reveals.
The case perhaps most directly in point is Thiel v. Southern Pacific Co. (328 U. S. 217), a civil case in which there had been a deliberate and intentional exclusion from the jury lists of all persons who worked for a daily wage. Like the present case, the exclusion of that class had been well-intentioned in that the exclusion was made to prevent anticipated hardship. The court stated (pp. 224-225): “It is clear that a federal judge would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship. But that fact cannot support the complete exclusion of all daily wage earners regardless of whether there is actual hardship involved. Here
*118 there was no effort, no intention, to determine in advance which individual members of the daily wage earning class would suffer an undue hardship by serving on a jury at the rate of $4 a day. All were systematically and automatically excluded. In this connection it should be noted that the mere fact that a person earns more than $4 a day would not serve as an excuse. Jury service is a duty as well as a privilege of citizenship; it is a duty that cannot be shirked on a plea of inconvenience or decreased earning power. Only when the financial embarrassment is such as to impose a real burden and hardship does a valid excuse of this nature appear. Thus a blanket exclusion of all daily wage earners, however well-intentioned and however justified by prior actions of trial judges, must be counted among those tendencies which undermine and weaken the institution of jury trial. ‘ That the motives influencing • such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right. Steps innocently taken may, one by one, lead to the irretrievable impairment of substantial liberties. ’ Glasser v. United States, [315 U. S. 60, 86].”
The court (p. 220) made clear that the systematic and intentional exclusion of any group that forms a cross section of the community strikes at the very heart of the jury system. “ The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. Texas, 311 U. S. 128, 130; Glasser v. United States, 315 U. S. 60, 85. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court ■ officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every .stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury.”
The distinction between excusing individual members of a class for hardship and the exclusion of an entire class was brought out in United States v. Butera (420 F. 2d 564, 573, supra). There was testimony in that case that some young adults were struck because, they were out of the State for reasons relating *119 to their education. The court stated, “ Importantly — see Thiel v. Southern Pacific Go., 328 U. S. at 224 * * * —it appears that members of the classes in question were excused only upon request or clear evidence from the questionnaire that excusable hardship did exist and not simply as a matter of course.” In the present case, the proof shows that students were excluded as a matter of course.
While the Thiel case was decided under the supervisory power of the Supreme Court over lower Federal courts and not avowedly as an announcement of constitutional doctrine, it is pertinent authority on the constitutional issue, because it depended on the authority of Smithy. Texas (311 U. S. 128) (see Crawford v. Bounds, 395 F. 2d 297, 310).
As the court stated in Thiel (328 U. S. 217, supra), it follows that this court cannot sanction the method by which the jury panel was formed in this case. The defendant’s challenge to the panel must therefore be sustained and the court hereby discharges the jury, so far as the trial of the informations in question is concerned (Code Crim. Pro., § 368).
While the court merely followed what it deemed the applicable case law in arriving at its decision, it could not help but agree with some of the “ policy ” arguments advanced by defendant’s able counsel, who, the court notes, is serving in this case without fee. The court is aware of the alienation of many of our youth from the institutions of government and feels strongly that participation in government, whether by jury duty or voting or other means, will tend to decrease this sense of alienation. Jury service is an important educational experience for the citizen. It encourages the development of civic responsibility as well as an interest in, and respect for, the law and its enforcement. For these reasons, as well as the primary one of providing a fair trial, the officials who administer the jury system should take whatever positive steps are necessary to insure that young adults are fairly represented on jury lists.
On the other hand, the court stresses that jury duty is just that — a duty; it is a responsibility that all citizens should take most seriously. When in the future more young adults are called to serve on juries, they should consider very carefully whether they have sufficient reasons before seeking to be excused; they, like all of our citizens, should be prepared to make some sacrifices to assure the proper functioning of our government.

. The court has accepted defendant’s statistics based on the actual population —■ as opposed to statistics based strictly on the number of persons actually eligible for jury service — because of the great disparity shown by these figures and because the difficulty in obtaining full and accurate figures for jury eligibles would place too great a burden on the defendant (see United States v. Butera, 420 F. 2d 564, 569-570, n. 13).