Gilbert H. King, J.
The defendants moved for an order striking the Brie County jury pool upon the grounds that the Brie County jury selection system “ illegally and unconstitutionally discriminates against black persons, women, young and poor persons ” and “ that the selection was not in compliance with the New York State statutes and the Rules and Regulations of the Appellate Division, Supreme Court, Fourth Department.”
*493 The procedures for initiating and conducting a challenge to a jury panel, including an evidentiary hearing if indicated, are set forth in CPL 270.10. The defendants concede that a challenge to a jury panel can only be made at the time of trial and may be made “ only by the defendant ” who is then about to be tried.
The People contend that this .motion is premature since none of the defendants has been brought to trial in Erie County or a panel returned for a term in which they are to be tried. These defendants were indicted in Wyoming County and their cases were transferred to Erie County for all further proceedings and for trial, by order of the Appellate Division, Fourth Department.
The People further contend that since the challenge is to the jury pool and not a jury panel, there is no authority for this proceeding.
No statutory basis or procedure similar to that set forth in CPL 270.10 exists for a challenge to a jury pool. The cases, however, leave no doubt that a defendant’s constitutional and common-law rights to a trial by a jury of his peers and to the equal protection of the laws under the Fourteenth Amendment create, as an essential corollary, the right to assert the failure of those charged with the jury selection process to comply with the constitutional guarantee and all State statutes, rules and. regulations enacted to implement it.
The objections to the timeliness of the motion and to the lack of statutory authority for its initiation must yield to the overriding consideration that a present resolution of this question is necessary for the orderly administration of justice.
On that premise and on the basis that the affidavits in support of the motion asserted facts sufficient to raise serious constitutional questions about the composition of the jury pool, the court conducted an extensive evidentiary hearing in which the methods and procedures employed in the selection of jurors were examined in detail.
The Erie County Commissioners of Jurors, over the years, have used the voters’ registry list almost exclusively as the source of names of persons called for jury service. There have been some volunteers but they accounted for a very small fraction of the total pool. The voters’ registry list is given in section 658 of the Judiciary Law as one of the suggested sources for prospective jurors’ names. “ It has become well-established that voter registration lists are appropriate for use in jury selection systems ” (United States v. Butera, 420 F. 2d 564, 573; Gorin v. United States, 313 F. 2d 641, cert. den. 374 U. S. *494 829; see, also, section 1025.2 of the Rules and Regulations of the Appellate Division, Fourth Department (22 NYCRR 1025.2) which directs the selection of jurors’ names “ from each city and town in proportion to the registration ”).
The names of eligible jurors were added monthly to a permanent jury pool and remained a part of the pool from the time of qualification to serve as a juror until a subsequent disqualification exemption, nonresidence, physical disability or death resulted in their removal from the pool. The names of those who served during the year also were removed and returned to the pool after a three-year period. As a result of this procedure the total pool of qualified jurors as of December 31, 1973 was 114,689 of which 7,385 were 1973 additions.
The defendants contend that the very existence of a permanent pool, created and maintained by monthly additions culled only by subsequent ineligibilities or disqualifications unlawfully discriminates against the young, the argument being that each year as the pool “ ages ” jurors pass from the young group and then remain in the pool for years and thus constantly overload the pool against the “ new ” young. This may be the effect of a permanent pool but it is the passage of time which causes that result — not an “ intentional and systematic discrimination ”. In United States v. Kuhn (441 F. 2d 179) the jury system was such that the wheel was filled only every two or four years with the inevitable result that for certain periods of time, a number of young adults, newly added to the voter registration lists were excluded from jury service. The court found nothing discriminatory or impermissible in this procedure.
Statistical proof offered on the trial indicated that while persons between the age of 21 and 29 years total 20.7% of the population of Erie County they comprise only 3.4% of the jury pool. This disparity is claimed by the defendants as a prima facie denial of equal protection for the “ young ”. The use of population rather than voter registration figures for comparative ratios in this context ignores a number of significant factors inherent in the jury selection process as it affects the ‘ ‘ young ’ ’ such as failure to respond to jury qualification questionnaires, a history (until recently) of a disproportionate voter registration, mobility of the young, absence for educational purposes, etc.
But whatever the basis for the use of the statistical figures or their reliability, they serve no probative purpose unless, as defendants contend, young adults between the age of 21 and 29 constitute a cognizable group for jury selection purposes. No *495 authority for that position can he found in the statutes of this State and young adults do not fall within any of the categories against whom discrimination is prohibited as set forth in section 13 of article 2 of the Civil Bights Law or in section 1025.2 of the Rules and Regulations of the Appellate Division, Fourth Department (22 ÜSTYCRR 1025.2).
Youth as a factor in jury selection matters was rejected in United States v. Kuhn (441 F. 2d 179, supra) [ages 21-23], in United States v. Allen (445 F. 2d 849) [ages 19-21] and gingerly accepted in United States v. Butera (420 F. 2d 564, 570, supra) as an “ admittedly ill-defined ” group, recognizing that no one can really determine at any given time or under any definitive guidelines the outer limits of a cognizable “ young group ”. Is it 21-29, 18-30, 25-40 or, as in Butera, 21-34? Statistics and ratios could be expected to change substantially depending on the age brackets used and therefore cast further doubt on their reliability and probative value.
However, even assuming, arguendo, that young adults between the age of 21 and 29 constitute a cognizable group or class for purposes of impermissible exclusion from jury service, the defendants have not met their burden of proving that there has been an intentional and systematic discrimination against them. “ Mathematical disparity, without more, is insufficient to meet this burden.” (People v. Chestnut, 26 N Y 2d 481, 488.)
The voters’ registry lists do not give ages, so no age factor was or is discernible to the selection personnel at the initial stage of the selection process. When the questionnaires are. returned they do contain the prospective juror’s birthdate. However, not a shred of proof except the statistical data was offered that age was a factor in the qualification or rejection of a juror (except of course to make certain that the age limits of 21-75 set forth in subdivision 2 of section 662 of the Judiciary Law were observed).
The former Deputy Commissioner of Jurors testified that it was her general policy to exempt those who indicated on their questionnaires that they were “ students ”, and that she did so without a request from them, on the theory that interference with their studies would be a hardship. There is no authority in the Judiciary Law or Appellate Division Rules for exclusion of “ students ” as a class. However well intentioned the Deputy Commissioner may have been in attempting to prevent or accommodate anticipated hardships, her actions did result in the systematic and intentional exclusion of students from the jury lists. Complete exclusion of a class regardless of motiva *496 tion and regardless of whether there is actual hardship involved is impermissible. (Thiel v. Southern Pacific Co., 328 U. S. 217, complete exclusion of all daily wage earners.) This is not to say that students may not properly have their service postponed for hardship reasons hut their student status does not create, or automatically entitle, them to postponement or exemption.
Student exclusion as a class no longer is practiced by the commissioner’s office. The current practice is to add students to the qualified list as they respond to the questionnaires, and to exclude them only if their questionnaires disclose their absence from Erie County or if they offer other satisfactory reasons for hardship consideration. This practice adequately complies with acceptable practices.
Other practices challenged by the defendants include exemption of certain occupations such as dairy farmers, operators of one-man business, and the like and the commissioner’s interpretation and application of subdivisions 3, 4 and 5 of section 662 of the Judiciary Law. The exemptions based on interpretation and application of the law were generally determined on an individual basis. They involved a judgment decision by the commissioner or his deputy and were a proper exercise of the authority granted by section 678-a of the Judiciary Law and section 1025.6 of the Rules and Regulations of the Appellate Division, Fourth Department (22 NYCRR 1025.6). Many of the decisions of the commissioner were the result of an understandable desire to accommodate, not to discriminate, and it cannot be said that any of the criteria used by him were so totally lacking in reasonable justification as to constitute an invidious discrimination and render it unconstitutional. (See People v. Chestnut, 26 N Y 2d 481, supra.) No metropolitan jury commissioner’s office could function effectively and fairly without the right and authority to make value judgments on juror qualifications within the law in individual cases. The Commissioner of Jurors did not abuse or exceed his authority in these matters.
No proof was presented to support defendants’ contention ■that the poor were the object of discrimination, systematic or otherwise, in the jury selection process. The voters’ registry lists contain no indication of economic status and none is required on the questionnaire. There was not a word of testimony to show that a single person was excluded ¡from a call to or denied the opportunity of jury service because of economic status.
*497 The claim of discrimination against black persons was not supported by the evidence. Defendants relied mainly on statistical data based on black population versus the jury pool, not voter registration versus jury pool representation. Population as a basis in this context affords no consideration of facts such as the percentage of questionnaires unanswered or returned by the post office or comparison of ratios of voter registration to population in other areas of the county. In any event, “ although a statistical disparity may be used, along with other factors, as evidence in support of a claim of purposeful discrimination, it is not ground, in itself, for concluding that a jury is impermissibly constituted ”. (People v. Chestnut, supra, p. 489.) Other factors in support of defendants’ claim do not exist. There was no proof that questionnaires were sent to black areas on a smaller proportion than to other areas.
The questionnaires do not require nor do they contain any designation of race or color. Counsel’s affidavit in support of the motion states that the cards of “ significant number of persons disqualified from jury service in past years have the notation ‘negro’ or ‘col’ written on them.” The proof was (1) that out of the entire pool, 13 cards contained notations as to color; (2) the first such card was in 1945 and the last in 1951; (3) they were in the qualified not the disqualified files. There can be no disagreement with the fact that any such notation on even one card is improper and in that sense is significant, but the notations reflect a practice long since discontinued. By their number they fail to buttress defendants’ claim of either the opportunity for or the exercise of intentional and systematic discrimination against black persons and their very presence in the qualified file denies the claim of exclusion from jury service.
Finally, the defendants contend that the composition of the jury pool grossly discriminates against women. They rely, in part, on their statistical study which concludes that although women compose 53% of the population of Erie County, only 17 % of those in the jury pool are women. That statistical proof is subject to some of the same variables and errors caused by the use of population versus jury pool representation rather than voter registration versus jury pool representation as heretofore discussed with reference to black and young persons. In the case of women, the probative value of the statistics is further diminished by the fact that women have an unqualified right to claim exemption from jury service under subdivision 7 of section 665 of the Judiciary Law. If the unqualified right *498 of women to claim exemption was responsible for, or a substantial factor in, the existence of a disparity, the claim of an impermissibly constituted pool would have no merit for it is exclusion not exemption that constitutes invidious discrimination. Even if accepted as technically unassailable a statistical showing of disproportionation in representation “ is not a ground, in itself, for concluding that a jury is impermissibly constituted.” (People v. Chestnut, supra, p. 489.)
However, during the hearing, several of the clerks who were assigned the task of selecting names from the voters’ registration lists testified that it was the practice to deliberately pick the names of more men than women. There was some disagreement among the witnesses as to whether they were ordered to follow that practice or merely heard or understood it to be the system to be followed. In any event all of the clerks testified that it was the practice generally followed, in varying degrees, until Commissioner Messina took office on October 1, 1973. Under his orders the practice was stopped on January 1, 1974. Thereafter names were randomly selected from the voters’ registration lists without regard to sex.
Justification for the deliberate selection of a larger proportion of men than women was based on the experience of the commissioner’s office that women claimed or were granted their statutory exemption (Judiciary Law, § 665, subd. 7) in such large numbers that in order to assure panels of jurors large enough to accommodate the continuing needs of the courts it was necessary, as a practical matter, to summon more men than women in the initial selection process.
Neither the practicality of the system employed nor the sincerity of the commissioner’s intentions and purposes permitted the deliberate exclusion of women from the initial selection process. The practice was in direct conflict with section 13 of the Civil Eights Law and section 1025.2 of the Rules and Regulations of the Appellate Division, Fourth Department (22 NYCRR 1025.2) which expressly forbid disqualification or discrimination from jury service by reason of sex.
In sum, the court finds no discrimination against .black or young people and no invidious discrimination in the granting of exemptions or the interpretation and application of subdivisions 3, 4, and 5 of section 662 of the Judiciary Law. The court does find that, prior to January 1, 1974 there was systematic exclusion of students as a class and a deliberate exclusion of women constituting discrimination contrary to law.
*499 The ineluctable result of such actions was to create an impermissibly constituted jury pool. That result does not, however, require the court to strike the entire jury pool as demanded by the defendants. The discontinuance of the proscribed practices after January 1, 1974 makes all jurors who volunteered or qualified in response to questionnaires mailed after that date members of a properly constituted jury pool and the sequential numbering system used in the commissioner’s office makes such jurors readily identifiable. Their names can be separated from •the rest of the pool and the Commissioner of jurors is directed to do so. When so separated they shall constitute the present Erie County jury pool.