Allen M. ANDERSON,
Petitioner-Appellant,

v.

J. Leland CASSCLES, Superintendent of
Great Meadow Correctional Facility,
Respondent-Appellee.

No. 492, Docket 75–2113.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1975.

Decided March 22, 1976.

Lanny Earl Walter, Albany, N. Y. (Albany Law School Legal Assistance Project, Albany, New York, on the brief), for petitioner-appellant.

Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen. of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

Before SMITH and FEINBERG, Circuit Judges, and WARD, District Judge.

ROBERT J. WARD, District Judge:

This is an appeal from the denial, without a hearing, of a petition by a state prisoner for a writ of habeas corpus in the United States District Court for the Northern District of New York, Edmund Port, *Judge*. For the reasons hereinafter stated, we remand to the district court for further proceedings consistent with this opinion.

Appellant Allen M. Anderson was convicted, after a jury trial, in Albany County Court of two counts of assault in the second degree, and was sentenced on March 8, 1973 to a five-year term of imprisonment on each count, the sentences to run concurrently. Prior to trial, appellant challenged the jury panel on the grounds that "black persons, culturally different, and persons of lower economic status as well as persons of lower ages have been systematically excluded and are substantially under-represented in said panel."

The state trial judge conducted a brief hearing at which the Commissioner of Jurors of Albany County ("the Commissioner") testified to the procedures used by him in obtaining names of persons qualified to serve on juries in the county. He stated that the names of prospective jurors were taken at random from the election district books, the city directory and the telephone directory and that those selected were sent questionnaires to be returned to determine eligibility to serve. The Commissioner acknowledged that fewer black persons served on juries than one might expect and testified that he had tried to remedy this underrepresentation of black persons by sending a greater number of questionnaires to wards in the county which he knew to be populated by blacks. However, he indicated that the rate of return from the black community was poor and that many of the questionnaires returned requested exemption from service. During the course of examination of the Commissioner, appellant's counsel asked the following question and received the following response:

Q. . . . Are people who are students automatically excluded from jury selection?

A. They are automatically—we put them off, we exempt them for the time being, until they are out of school, because some of them put on the back that they are in school and they won't be home until a certain time, and we can't promise them then that they can be on the jury.

Despite the ambiguity of this answer, appellant's counsel did not pursue this line of inquiry, focusing instead on the efforts made to increase the representation of black persons on juries.

The second witness called by the appellant testified, as a statistics expert, to the statistical underrepresentation of blacks.

No other evidence was presented by appellant.

The trial judge denied appellant's challenge to the jury panel, finding that intentional and systematic discrimination had not been proven. The trial and conviction followed. An appeal was taken to the Appellate Division of the State Supreme Court, which affirmed the judgment of conviction. *People v. Anderson,* 42 A.D.2d 1007, 348 N.Y.S.2d 227 (3d Dep't 1973).

The Appellate Division, upon its review of the hearing record, concluded that appellant had failed to prove that "a distinct attitudinal class of persons was systematically excluded or that he was prejudiced in any manner by the panel that was drawn." 348 N.Y.S.2d at 228 (citations omitted). Leave to appeal to the New York Court of Appeals was denied. Thereafter, this petition for a writ of habeas corpus was filed.

The petitioner presents three claims: First, that the record revealed that students over the age of twenty-one were systematically excluded from jury service in violation of the Sixth and Fourteenth Amendments. Second, that the underrepresentation of black persons on the panel from which appellant's jury was chosen, likewise, violated his constitutional rights. Third, that the Commissioner's failure to follow the state statutory procedure for choosing jurors deprived him of equal protection of the law.

Judge Port held that with respect to the third claim, appellant had failed to exhaust his state remedies. As to the remaining contentions, Judge Port held that appellant had had a full and fair hearing in the state court and had failed to overcome the statutory presumption of correctness which attached to the state court's findings adverse to appellant.

A threshold question is whether appellant has satisfied the exhaustion requirement of 28 U.S.C. § 2254(b) with respect to each of his three claims. Appellee argues that appellant has not exhausted his claims that students were excluded from and blacks were underrepresented on his jury panel because he presented factual material to the district court that was not presented to

the state courts, although available at that time.

Under *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) and this Court's decisions, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied when the substance of the constitutional claim has been presented to the state courts in a fashion which provides them a "fair opportunity" to consider it. *See, e. g., United States ex rel. Gibbs v. Zelker,* 496 F.2d 991 (2d Cir. 1974); *United States ex rel. Nelson v. Zelker,* 465 F.2d 1121 (2d Cir.), *cert. denied,* 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). When a habeas corpus petitioner has previously presented a claim to the state court, but presents additional facts to the federal court which materially alter the claim or crucially affect its determination, the petitioner must present this evidence to the state court before the federal court can entertain his petition. *See United States ex rel. Cleveland v. Casscles,* 479 F.2d 15 (2d Cir. 1973); *United States ex rel. Rogers v. LaVallee,* 463 F.2d 185 (2d Cir. 1972); *United States ex rel. Figueroa v. McMann,* 411 F.2d 915 (2d Cir. 1969).

Appellant submitted both his claims that students and blacks were not properly represented on his jury panel to the state courts. The additional statistical evidence and the deposition of the Assistant Commissioner of Jurors, taken in connection with *People v. Marr,* 67 Misc.2d 113, 324 N.Y.S.2d 608 (Justice Ct., Albany County 1971), do not materially alter the nature of the claims nor critically affect our determination of them. Consequently, appellant has satisfied the exhaustion requirement of 28 U.S.C. § 2254(b) with respect to these two claims.

Appellee, also, urges us to affirm Judge Port's decision that appellant had failed to exhaust in connection with his claim that deviations from state law governing jury selection procedures denied him equal protection. We need not reach this question for it is well established that "the fact that a jury committee did not follow statutory guidelines in selecting the jury

array is not a federal constitutional error, absent a showing that the violations operated to exclude an identifiable group from the jury list." *Cobbs v. Robinson*, 528 F.2d 1331 at 1341 (2d Cir. 1975), cert. denied, —— U.S. ——, 96 S.Ct. 1419, 47 L.Ed.2d 354, 44 U.S.L.W. 3493 (1976). *See also, Bradley v. Texas*, 470 F.2d 785 (5th Cir. 1972). Thus, appellant's third claim does not raise an independent federal question and proof of deviations from state law in jury selection is relevant only to the extent that appellant can establish these deviations operated to exclude either black persons or students. Accordingly, the dismissal of the third claim was proper.

Turning to appellant's contention that he was denied his federal constitutional rights because he was tried by a jury selected from a panel consisting of approximately 2% black persons out of an eligible county black population of 4.4%, we agree with Judge Port that the decision of the state court, following a full and fair hearing, was not clearly erroneous.

▬▬ The record demonstrates only that there is a difference between the percentage of the population consisting of black persons eligible to serve on juries and the percentage of black persons on the jury panel. The law is clear that evidence of mathematical disparity, without more, is insufficient to make out a *prima facie* case of improper jury selection. There is no consti-

tutional requirement that petit jury panels mirror the community from which they are drawn. The Sixth and Fourteenth Amendments are violated only when an identifiable group is systematically excluded, resulting in a jury panel which is not reasonably representative of the community. *See, e. g. Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

In the instant case, the record contains no evidence that the statistical disparity resulted from any systematic and unreasonable exclusion of blacks from jury service by the Commissioner. Rather, the Commissioner made a special effort to increase the representation of black community members on juries by sending a greater number of questionnaires to wards in the county which he knew to be populated by blacks. Although he may have improperly excused from service those who pleaded financial hardship, he had no opportunity to know the race of those excused. *See Alexander v. Louisiana, supra.*

▬▬ We cannot say on these facts that a jury panel consisting of approximately 2% black persons drawn from a presumptively eligible black population of 4.4% is so unrepresentative of the community from which it is drawn as to violate appellant's constitutional rights.[1]

---

1. Appellant argues that the fact that the percentage of blacks on his jury panel was less than half of the presumptively eligible black population cannot be considered statistically random. However, whether the difference is statistically significant is not dispositive of its constitutional significance. The question of what deviation from the statistical ideal will render a jury not representative of a cross-section of the community has arisen frequently under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* ("the Act"). *See, e. g., United States v. Goff*, 509 F.2d 825 (5th Cir.), *cert. denied*, 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83, 44 U.S.L.W. 3204 (1975); *United States v. Jenkins*, 496 F.2d 57 (2d Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Fernandez*, 480 F.2d 726 (2d Cir. 1973); *United States v. Test*, 399 F.Supp. 683 (D.Colo.1975). *See generally*, Gewin, An Analysis of Jury Selection

Decisions, 506 F.2d 811 (printed as an appendix to *Foster v. Sparks*, 506 F.2d 805 (5th Cir. 1975)). Were this a case falling under the Act, our decision in *United States v. Jenkins, supra*, would be dispositive. In *Jenkins*, 5.45% of the eligible population was black, while blacks comprised only 3.3% of the jury source list. Absolute percentage equality would have resulted in one additional black person on a jury panel of 60. We held that the test to be applied under the Act is the numerical effect upon the composition of the jury panel rather than the percentage effect and that a difference of one person in 60 was not a substantial deviation from a cross-section of the community. The duty to provide a jury drawn from a fair cross-section of the community under the Sixth Amendment is no greater than that under the Act. In fact, we have indicated that the Act may impose a greater duty than the Constitu-

The claimed exclusion of students is another matter. Appellant contends that 4.3% of the population of Albany County consists of students over the age of twenty-one who are excluded from jury service although eligible under state law. Appellee argues that students are merely excused on their request but that, even if they were excluded, appellant's constitutional rights were not violated.

Whether or not students over the age of twenty-one constitute an identifiable group whose exclusion from jury service is constitutionally impermissible is a question which appears never to have been decided by this Court nor, so far as research discloses, any other federal court.[2] Two New York State courts have, however, held the exclusion of students offensive to the Constitution. *People v. Attica Brothers*, 79 Misc.2d 492, 359 N.Y.S.2d 699 (Sup.Ct., Erie County 1974); *People v. Marr, supra*. The exclusion of students over the age of twenty-one, in our view, would pose a substantial constitutional question which is not foreclosed by previous decisions of this Court.[3]

From the present state of the record, however, we cannot conclude that students over the age of twenty-one were automatically excluded. The initial challenge to the jury panel presented to the state trial court was variously phrased as the exclusion of "younger people," "young adults" or "persons of lower ages." Although appellant's trial counsel orally cited the trial judge to *People v. Marr, supra,* as noted above, he asked only one question relevant to the

exclusion of students, the answer to which was ambiguous. Trial counsel and the trial court appear to have focused on the claimed underrepresentation of blacks.

We think it premature to decide whether students over the age of twenty-one can constitutionally be excluded from jury service absent an adequate record clearly presenting the issue. Inasmuch as "the material facts were not adequately developed at the State court hearing," 28 U.S.C. § 2254(d)(3), and there is evidence in the record to indicate that the state court's findings adverse to appellant may have been erroneous, we remand to the district court to conduct a further hearing limited to the question of whether students were systematically excluded from jury service at the time of appellant's trial, or, alternatively, to stay the case to permit the state court to conduct such a hearing. *Cf. United States ex rel. Cannon v. Montanye,* 486 F.2d 263, 268 (2d Cir. 1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974).

The case is remanded for further proceedings consistent with this opinion.

---

tion. *See United States v. Fernandez, supra,* at 733.

2. Appellee relies upon *United States v. Ross,* 468 F.2d 1213 (9th Cir. 1972), *cert. denied,* 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973), and *United States v. Duncan,* 456 F.2d 1401 (9th Cir.), *vacated,* 409 U.S. 814, 93 S.Ct. 161, 34 L.Ed.2d 72 (1972), but neither is controlling here. In *Ross,* the court held that it was constitutionally permissible ·to excuse students who specifically requested exemption from jury service while attending school. *Duncan* held that persons under twenty-one years of age may be excluded from jury service without offending the Constitution.

3. Appellee, also, relies on cases holding that young persons do not constitute an identifiable group. *See, e. g., United States v. Olson,* 473 F.2d 686 (8th Cir.), *cert. denied,* 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973); *Chase v. United States,* 468 F.2d 141 (7th Cir. 1972); *United States v. Kuhn,* 441 F.2d 179 (5th Cir. 1971). The rationale of these cases is that there is no basis for distinguishing one age group from another consisting of persons a few years older and that the limits of the class of young adults are not ascertainable. We note only that a group consisting of students does not have the amorphous, undefinable quality of a group consisting of young adults or younger persons.