152 N.J. Super. 259 (1977)
377 A.2d 950
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALFRED A. PORRO, JR., AND THOMAS JONES, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 20, 1977.
*262 Mr. Bernard L. Segal for defendant Alfred A. Porro, Jr. (Mr. Michael A. Querques, attorney of record; Messrs. Brigadier and Margulies, of counsel).
Mr. James D. Checki, Jr. for defendant Thomas Jones (Messrs. Checki & Politan, attorneys).
Mr. James Mayer, Special Deputy Attorney General, for the State (Mr. Roger W. Breslin, Special Deputy Attorney General  In Charge, Acting Prosecutor of Bergen County).
SCHIAFFO, J.S.C.
This motion challenges the array of the grand jury and seeks dismissal of the indictment.
*263 Defendants were indicted by a Bergen County grand jury on October 30, 1975 for the crimes of conspiracy and misconduct in office.
Defendants had previously filed several motions focusing on dismissal of the indictment, asserting grounds ranging from allegations of prosecutorial misconduct to deprivation of the Sixth Amendment right to a speedy trial. All other pretrial motions have been heretofore decided. The one remaining motion is based on the alleged improper selection and composition of the grand jury responsible for returning the indictment. This challenge pierces the very heart of any indictment's vitality: the selection and composition of the grand jury.
Defendants present a two-pronged attack on the jury selection process at this time (1974-1975) in Bergen County. First, they allege the substantial under-representation of certain classes, and second, they allege the systematic exclusion of students, a cognizable class. The State denies that students constitute a cognizable class, raises the issue of timeliness, and additionally points out the serious impact that a dismissal would have in this case since the statute of limitations has already run, foreclosing the possibility of reindictment. As to the latter assertion, the court dismisses the same out of hand because if constitutional rights have been violated and the issue timely raised, any impact must yield.

Timeliness
R. 3:6-2 provides that upon indictment the challenge to the array "may be the basis of a motion to dismiss the indictment." Furthermore, such a motion shall be made within 30 days of the service of the complaint or within 30 days of entry of the plea, whichever is later, or within such further time as the court permits.
Defendant Porro initially filed a challenge to the array as part of a civil suit instituted against the Bergen County Prosecutor's Office in October 1975. This challenge was prior *264 to the date of indictment. Subsequent to the indictment, in the first week of November 1975, defendant Porro filed a similar challenge pro se in the criminal action now pending. The filing of these motions manifests a clear intention on behalf of defendant Porro to pursue a challenge to the array and both were made well within the prescribed time limits of R. 3:6-2.
Subsequent action taken by the courts further support a finding that the challenge with respect to both defendants is timely. Upon the order of Judge Malech and with consent of all parties, an omnibus hearing was scheduled for the end of May 1976. The purpose of this hearing was to dispose of all outstanding pretrial matters. The hearing was conducted by this court and disposition of the challenge to the array was reserved. Another hearing was conducted by this court in September 1976, whereupon it became evident that defendants' challenge would require extensive additional discovery before any decision on the merits could be reached. The court, therefore, reserved decision until such reasonable time that discovery was complete.
Thereafter, on November 30, 1976 Assignment Judge Trautwein, issued an order mandating that certain jury commission and other relevant records be made available to defendants. The order also provided that it was without prejudice to (among other things) defendants' challenge to the array.
It is the opinion of this court that the November 30, 1976 order of the assignment judge erases any doubt as to the timeliness of the present motion in that it clearly indicates an intention to sanction an extended period in which defendants could perfect discovery and does so in accordance with the tenets of R. 3:6-2. Although it is true that the time limitations prescribed by our court rules must be honored so as to advance the orderly administration of justice, these rules must maintain a degree of guarded flexibility and adapt where good cause is shown and the interests of justice would be served.
*265 The motion is found to be timely.

Under-Representation
The thrust of the defendants' challenge is that because of certain alleged defects in the jury selection process they have been denied their constitutional right to a grand jury which represents a fair cross-section of the community.
Although the Fifth Amendment right to indictment has not been deemed one of those essential rights applicable to the states through the Fourteenth Amendment, where, however, the individual states elect to grant this right, it is axiomatic that the principles of due process and equal protection must adhere. Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (Douglas, J. concurring). The State of New Jersey has extended this right to individuals. N.J. Const. (1947), Art. I, par. 8. One need not dwell on the recognition that a necessary extension of both the Fifth and Sixth Amendments of the Federal Constitution is that the defendants be indicted and tried by juries of integrity representative of a valid cross-section of the community. Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1881); Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). However, the scope of this right does not entitle defendants to personally select to their satisfaction the grand jury which will consider the charges brought against them. Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1880); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). The Constitution protects them from consideration by a grand jury selected as a result of systematic exclusion, intentional design or scheme which excludes any identifiable class of persons solely because of that classification. This rationale extends to the situation where a grand jury will be absent or proportionately lacking members of a cognizable class. *266 Virginia v. Rives, supra; State v. Smith, 55 N.J. 476 (1970). There is no constitutional tolerance for the systematic and deliberate exclusion of members of any cognizable class, notwithstanding the underlying motive or good faith of those entrusted with the selection process. Dow v. Carnegie-Illinois Steel Corp., 224 F.2d 414 (3 Cir.1955), cert. den. 350 U.S. 971, 76 S.Ct. 442, 100 L.Ed. 842 (1956); Crawford v. Bounds, 395 F.2d 297 (4 Cir.1968).
In arguing the under-representation of certain classes, the defense introduced the testimony of a qualified expert in the field of policy sciences and psychology, Dr. John B. McConahay, presently associated with Duke University. Dr. McConahay testified as to the alleged under-representation of women, young people between 18-34 years of age, blue collar workers and blacks, and provided the court with a statistical evaluation of these groups in relation to their presence in the county and in the grand jury pool. He further pointed out that the use of voter registration lists as the source of names in jury selection could, as here, foreseeably result in a situation where the master list would end with prospective jurors having surnames beginning with the letters M-W. This, he argued, allegedly creates the risk of a disproportionate number of jurors not being representative of certain ethnic groups, although no specific proof was offered in this regard.
These arguments are without merit. The use of voter registration lists as the sole source of names for prospective jurors has been consistently upheld by the federal courts and the courts of this State despite the inevitable result of some statistical disparity and disproportionate representation of certain groups. Federal Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 et seq.; State v. Rochester, 54 N.J. 85 (1969); State v. Forer, 104 N.J. Super. 481 (Law Div. 1969). The decision in State v. Smith, 102 N.J. Super. 325 (Law Div. 1968), aff'd 55 N.J. 476 (1970), illustrates the firm adoption of this policy.
*267 This federal statute approves the use of the voter registration lists as the source of names for jury service and indicates it is the most effective means of obtaining juries which reflect a fair cross-section of the community. This court agrees with the policy expressed in the federal statute and holds that the use of voter registration lists as a source of names for jury service is a valid method of preparing jury lists, even though qualified members of a particular class of persons are under-represented on the voter registration lists. [at 355]
Precedent therefore recognizes that disproportionate representation may result. This may be attributable to those citizens who elect not to register to vote or there may be a disparity in the demographic characteristics of the population between any two municipalities in a given county. The jury need not be the mirror image of the community. Clones, need not, nor can be produced.

Systematic Exclusion of Students
Defendants have the burden of proof as to a prima facie case of systematic exclusion. See, e.g., Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945), reh. den. 326 U.S. 806, 66 S.Ct. 86, 90 L.Ed. 491 (1945). To sustain this burden they must demonstrate that (1) an identifiable class does in fact exist and (2) purposeful exclusion of this class has occurred. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). Cognizability may be determined by considering three factors: (1) the presence of some quality or attribute which defines and limits the group; (2) a cohesiveness of attitudes and experience which distinguishes the group from society in general, and (3) a "community of interest" which may not be adequately represented by other societal groups. United States v. Guzman, 337 F. Supp. 140, 143 (S.D.N.Y.), aff'd 468 F.2d 1245 (2 Cir.1972), cert. den. 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).
In the present case defendants have effectively demonstrated that at the time of the subject indictment the grand jury selection process in Bergen County was such that full-time *268 students were automatically excluded from service. Hence, the second criterion enunciated in Hernandez, supra, has been satisfied. The more perplexing issue is whether students constitute a cognizable class so as to satisfy the first criterion. Before reaching that determination, it is necessary to place the entire analysis within the context of the Bergen County grand jury selection process affecting the 1975 term.
Pursuant to R. 1:33-2 and In re Supervision and Assignment of the Petit Jury Panels in Essex Cty., 60 N.J. 554 (1972), the assignment judge of the county is vested with the primary responsibility for the supervision of jury selection mechanics. This responsibility is further delegated and shared in conjunction with the jury commissioners and associated personnel. During the period of time in question the selection process of both grand and petit jurors was in substantial accord with the Manual on the Selection of Grand and Petit Jurors prepared by the Administrative Office of the Courts (March 1973). Pursuant to the Manual, which cites as its authority a State Supreme Court directive, voter registration lists were and presently are the sole source of prospective jurors. The initial ratio is the total number of registered voters in each municipality over the total number of registered voters in the county. The resultant percentage represents the total number of persons desirable from each municipality to be considered prospective jurors. Once the list of prospective jurors is formed, questionnaires are sent, and upon their return the jury commissioners apply the certain statutory qualifications and exemptions based upon the content of the questionnaire. The final compilation is the master list. The theory of random selection prevails throughout the process and the ultimate panel is so drawn.
Defendants produced the depositions of the assignment judge and the jury commissioners which confirm the fact that at the time of this indictment students were systematically and purposely excluded from the list from which the prospective jurors were ultimately drawn. There is not presently, nor was there at that time, any existing statutory *269 or administrative authority permitting the blanket exclusion of students from jury service in the State of New Jersey or Bergen County. These depositions disclose no malevolent intent or rationale underlying this process. In fact it appears that the motivation was the good faith belief that students should not be disturbed in their academic pursuits, particularly when jury service would require their return to Bergen County from learning institutions quite some distance away. However, the fact of this benign or neutral motivation is irrelevant as deliberation and intention need not be shown where a cognizable class has been systematically excluded from the array. Crawford v. Bounds, supra; Dow v. Carnegie-Illinois Steel Corp., supra. The procedure under attack has since been altered in Bergen County to include students and others on the list of prospective jurors and to consider excuses on a case by case basis commencing January 1, 1977.
Thus having shown the systematic exclusion of students, the defendants' obligation at this juncture is to demonstrate that "students" do in fact constitute an existing identifiable class of constitutional import, the systematic exclusion of which, irrespective of motive, would taint the composition of the master list rendering the ensuing indictment invalid.
The threshold inquiry is the definition of a student. A student is a person formally engaged in learning; one enrolled in a school or college; any person who studies, investigates or examines thoughtfully. The Random House Dictionary of the English Language (unabridged ed. 1966). A student is a learner or a scholar; one who attends school. Webster's Seventh New Collegiate Dictionary (1972 ed.).
Students are therefore persons who are engaged in a course of study. Given this definition, the three factors suggested by the Guzman case must be applied to determine their status as cognizable or noncognizable. First, is there within the concept of students the presence of some quality or attribute which defines and limits the parameters of this group? Second, do they demonstrate a cohesiveness of attitudes and experience which distinguish them from society in *270 general? Third, is there a "community of interests" which may not be adequately represented by other societal groups? This court finds that students do not constitute a cognizable class when assessed in light of these factors.
There are certain groups in society which have classically constituted identifiable classes for the purpose of constitutional protection and definition. Race, sex and economic status are examples of these classifications. Carter v. Jury Comm'n of Greene Cty., 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (blacks); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (women); Thiel v. Southern Pacific Co., supra (daily wage earners). Our own statutes governing juries recognize these same classifications specifically and prohibit the disqualification of any juror falling within any of these enumerated classes where he otherwise meets those qualifications prescribed by law. N.J.S.A. 2A:72-7. Students per se have not been so isolated by statute or case law for special constitutional treatment.
This court further notes that there exist portions of our statutes dealing with juries which in fact result in the systematic exclusion of certain groups, primarily on the basis of employment. N.J.S.A. 2A:69-2 provides for the exemption from service a number of groups: school teachers during the school year; regularly licensed and practicing physicians and dentists; members of the police force and State Legislature, etc. Systematic exclusion also results with respect to those disqualified for service under the provisions of N.J.S.A. 2A:69-1 for reasons of residency, age, literacy and ability to comprehend English. These and similar exemptions or preconditions to service have been unheld as necessary and reasonable providing no valid basis for challenge. See, e.g., Government of the Canal Zone v. Scott, 502 F.2d 566 (5 Cir.1974) (military personnel); United States v. Catena, 500 F.2d 1319 (3 Cir.1974), cert. den. 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed. 2d 641 (1974) (physicians in active practice); Rawlins v. Georgia, 201 U.S. 638, 26 *271 S.Ct. 560, 50 L.Ed. 899 (1906) (lawyers, doctors, firemen); State v. Anderson, 132 N.J. Super. 231 (App. Div. 1975) (residence requirements).
Students do not conform to our traditional concepts of constitutionally defined identifiable classes. Their motivations and goals are diverse. In this court's opinion this so-called group is best analogized to an occupational status. This conclusion is mindful of the guidelines set forth in United States v. Guzman, supra. A student is basically not different from a doctor, lawyer or teacher. Each of these professions possesses certain affinities and collective sensibilities among its members which sets it apart from the others. However, none of these professions retains a uniqueness so predominate as to raise it to a level of constitutional recognition as an identifiable class.
The more probing question involves the parameters of this group. There is a tendency in society to harbor a stereotypical image of the student. The vivid events of the 1960s have left us with the general impression that all students are young, perhaps within the age range of 18-34 years. This court rejects such an image as a fallacy in the 1970s.[1] Institutions of learning have opened their doors to persons from every societal strata. Today, persons engaged in a course of study are not confined to the liberal arts campus. Instead, we presently offer courses of study on a part-time basis, vocational training, correspondence study, schools devoted entirely to the study of theater arts, ad infinitum. Each individual enrolled in one of these curriculums falls within the accepted dictionary definition of a student. The contemporary student profile may be of a mother returning to school to either commence or complete her formal education.
*272 Even more compelling is the realization that the age range of students is expansive. There is a very definite trend toward the enrollment of persons over 30 at both the graduate and undergraduate levels. This trend is reflected in the student enrollment of Bergen County schools. Both Fairleigh Dickinson University and Bergen Community College made available to the court a compilation of statistical data which indicates a significant number of students enrolled over the age of 34, particularly in part-time programs.
Hence, is not a student the embodiment of a cross-section of several identifiable classes present in the community? A student may be 18 or 45. A student may be male or female; black or white. The definition of a student as one engaged in a course of study defies further definition. The possibilities raised by such a definition are many. This court sees no common bond existing between a student of nuclear physics and a student of the arts, a student of modern languages and a student of air-conditioning and refrigeration, and a student of theology and a student of the ballet  other than the pursuit of study. It is for these reasons that the court must find that students do not constitute a cognizable class of constitutional dimensions whereby their exclusion would deprive defendants of indictment by a grand jury of integrity, representative of a valid cross-section of the community. Neal v. Delaware, supra.
This is not to say that the court condones the blanket and automatic exclusion of students which was the practice prior to January 1, 1977 and has since ceased. Such systematic exclusion was improper and should not have been done. However, the fact of this omission under the present circumstances does not violate the defendants' constitutional rights. While a student may have good cause to complain of his automatic exclusion from service during the critical period of this case, defendants are not so prejudiced.
This court takes note of the fact that there has been recognition of student cognizability by the courts of other states having equal jurisdiction. See, e.g., People v. Marr, *273 67 Misc.2d 113, 324 N.Y.S.2d 608 (Justice Ct. 1971), and People v. Attica Bros., 79 Misc.2d 492, 359 N.Y.S.2d 699 (Sup. Ct. 1974). However, in this court's opinion those determinations were arbitrary without ascribing reasons therefor, or made certain assumptions not specifically proved. This court is not bound by these decisions. The opinions of sister states further indicate no clear and convincing consensus on student cognizability. This expression of uncertainty, together with the court's opinion, in any event requires that any doubt, if it exists, must be resolved in favor of sustaining the indictment. The court's power to dismiss an indictment is not to be exercised except on the clearest and plainest grounds and the indictment should stand unless it is palpably defective. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Ferrante, 111 N.J. Super. 299, 304 (App. Div. 1970).
Defendants' motion is denied.
NOTES
[1] It is worthy of note that the statistical disparities testified to by Dr. McConahay show no gross disparity in relation to other groups studied with respect to the number of those 18-34 years of age in the jury wheel studied.