UNITED STATES of America, Plaintiffs,

v.

Gerald I. GRUBERG and Charles S. Ronder, Defendants.

No. 79 Crim. 447 (WCC).

United States District Court,
S. D. New York.

Oct. 29, 1979.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the U. S.; David C. Patterson, Asst. U. S. Atty., New York City, of counsel.

Zane and Teitler, New York City, for defendant Charles S. Ronder; Stanley A. Teitler, Edward S. Rudofsky, Richard H. Levenson, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge.

Defendant Ronder was indicted on June 18, 1979 on two counts. Count 1 of the indictment alleged that defendant, the independent accountant for the Ulster Electric Supply Company of Kingston, New York, had conspired with Gerald Gruberg, the president of that company and a named co-conspirator, and Grace Ede, the company's bookkeeper, an unindicted co-conspirator, to make and subscribe false tax returns on behalf of the company in violation of 26 U.S.C. § 7206(1). Count 3 alleged that defendant Ronder knowingly aided and advised the preparation and filing of a false tax return on behalf of the Ulster Electric Supply Company, in violation of 26 U.S.C. § 7206(2). Count 2 of the same indictment charged co-defendant Gruberg with a substantive violation of 26 U.S.C. § 7206(1).

On June 28, 1979, defendants Ronder and Gruberg were arraigned. Each pleaded not guilty. On September 9, 1979, co-defendant Gruberg withdrew his plea of not guilty and pleaded guilty to Count 2 of the indictment. Defendant Ronder has now moved to transfer this case to the Northern District of New York under 18 U.S.C. § 3240 or Rule 21(b), F.R.Crim.P. In addition, Ronder has moved to dismiss Count 1 of the indictment as being in violation of Wharton's Rule; to dismiss the entire indictment on grounds that residents of Columbia, Greene and Ulster counties were systematically excluded from the Grand Jury array, in violation of the Fifth and Sixth Amendments of the United States Constitution and of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq.; that the Grand Jury was an unconstitutional "open-ended" referral of an investigation by the Internal Revenue Service to the Justice Department in violation of Rule 6(e), F.R. Crim.P.; that the prosecution improperly disclosed evidence to the Grand Jury, in violation of Rule 6, F.R.Crim.P.; and that the indictment was the result of prosecutorial misconduct; to inspect the Grand Jury minutes, pursuant to Rule 6, F.R.Crim.P.; for discovery; to suppress defendant Ronder's Grand Jury testimony, on the grounds that Ronder was a target of the Grand Jury investigation at the time that he testified; to suppress statements made by Charles Simmons, an attorney who at one point apparently represented the Ulster Electric Supply Company; and to take the depositions of Gerald Gruberg, Charles Simmons and Grace Ede the former bookkeeper for the Ulster Electric Supply Company, who was named as an unindicted co-conspirator in the indictment. The Government has opposed defendant's motions to transfer, to dismiss the indictment, to inspect the Grand Jury minutes, to suppress, and to take depositions, and has asserted that all material requested in defendant's motion to compel discovery has been provided to defendant.

For the reasons stated below, the Court will grant defendant Ronder's motion to transfer under Rule 21(b), F.R.Crim.P. The motion to dismiss Count 1 of the indictment will be denied. The motion to dismiss the indictment under 28 U.S.C. § 1867 will be denied without prejudice. The motions to dismiss due to the "open-ended" nature of the Grand Jury proceeding, improper disclosure of matters occurring before the Grand Jury, lack of competent evidence before the Grand Jury and prosecutorial misconduct will be denied. The motions to inspect the Grand Jury minutes and to take depositions will be denied. Decision on the discovery motion and on the motion to suppress will be deferred, pending transfer of the case to the Northern District of New York.

**1. *Motion to Transfer***

**A. 18 U.S.C. § 3240 claim**

Defendant's first contention is that he should be granted a transfer to the Northern District of New York "as of right" pursuant to 18 U.S.C. § 3240, covering venue in criminal cases where a new federal judicial district or division is transferred or where territory is transferred from one district or division to another district or division. The basis for defendant's claim is that Ulster County, the county in which the offices of the Ulster Electric Supply Company are located and where the acts alleged in the indictment are alleged to have taken place, was transferred from the Southern District of New York to the Northern District of New York, effective March 31, 1979, pursuant to P.L. No. 95–408, § 4(c), 92 Stat. 885 (1978) (*codified at* 28 U.S.C. § 112). Defendant asserts that § 3240 requires the Court to transfer a prosecution for offenses committed within a transferred county, such as Ulster County, prior to the transfer to the new district, here the Northern District of New York, whenever the defendant so requests.

The defendant's construction of § 3240 as conferring an automatic right to transfer on a defendant who so requests cannot be supported by the language of § 3240, the case law construing the section, or the policy considerations underlying these venue provisions. § 3240 states that:

"Whenever any new district or division is established, or any county or territory is transferred from one district or division to another district or division, prosecutions for offenses committed within such district, division, county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district or division had not been created, or such county or territory had not been transferred, *unless the court upon the application of the defendant, shall order the case to be removed to the new district or division for trial.*" (emphasis added).

Defendant first argues that the Court should read the language of the last sentence as a mandatory "shall," requiring a transfer to the new district following application by the defendant. The use of the word "shall" in this context, however, is grammatically not in a mandatory sense, but rather, as a conditional subjunctive following "unless"; the statutory language is thus silent on the standards under which the Court should review the defendant's application to transfer.

Further, the legislative history indicates that the Court should look to the Federal Rules of Criminal Procedure—in this case, Rule 21 on transfer from the district for trial—in implementing the final sentence of § 3240. The section was initially enacted as part of § 59 of the Judiciary Act of 1911, c. 231, § 59, 36 Stat. 1103, formerly codified at 28 U.S.C. § 121, (1940 ed.). Section 59 covered venue in both civil and criminal actions affected by the creation of a new judicial district or the transfer of territory from one district to another, and referred to § 58 of the Judiciary Act, codified at 28 U.S.C. § 119, the precursor of current 28 U.S.C. § 1404 covering change of venue in civil cases, to provide the mechanism for transferring cases from the original district to the new district. In 1948, those venue provisions of § 59 which related to criminal cases were transferred to Title 18 on Criminal Procedure Act of June 25, 1948, c. 645, 62 Stat. 827; in 1949, this new section was amended, Act of May 24, 1949,

P.L. No. 72, c. 139, § 50, 63 Stat. 96, to delete the reference to the transfer mechanism of 28 U.S.C. § 119 (now 28 U.S.C. § 1404), since, as the House report indicated, that reference was "surplusage in view of Rule 19 *et seq.* of the Federal Rules of Criminal Procedure." H.R.Rep.No.352, 81st Cong., 1st Sess. (1949), *reprinted in* U.S.Code Cong. & Admin.News, pp. 1248, 1262 (1949). The history of the statute thus suggests that current Rules 20 through 22 [1] on transfer of criminal proceedings establish the circumstances under which a court should order a case arising in one judicial district to be transferred to a newly established or expanded judicial district which encompasses the territory in which the offense allegedly occurred.

This interpretation is supported by the fact that none of the cases construing § 3240, or its predecessor § 59, have found that defendant had the right to transfer under the venue section unless Rule 21(b) factors were also present.

The majority of cases interpreting this section have not dealt directly with the issue of standards for transfer. In *Lewis v. United States,* 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615 (1929), the defendants were alleged to have committed certain violations of the national banking laws in Tulsa, Oklahoma prior to the transfer of Tulsa County and nine other counties from the Eastern District of Oklahoma to the newly created Northern District of Oklahoma. Defendants were indicted and convicted in the Eastern District. They then moved to dismiss the indictment on the grounds that the court lacked jurisdiction to hear the case and that the Grand and Petit Juries had not been legally constituted, *id.* at 66, 49 S.Ct. at 258. The Supreme Court found that neither § 59 nor the provision of the Sixth Amendment granting defendant a right to

be tried by "jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law" had been violated, since the Eastern District continued to have jurisdiction over crimes committed in its former territory under § 59, the prior statute establishing the Eastern District, and the statute transferring the ten counties in question to the new Northern District, and since the juries had been selected under the Eastern District court's power to call jurors from all counties within the district's former territory. *Id.* The *Lewis* case did not specifically consider the standards to be applied in granting a transfer under § 59 if the defendant had made a transfer application, but noted only that the defendant had failed to "claim the right to be tried in the Northern District," *id.* at 69 n.3, 49 S.Ct. at 258 n.3.

Later cases have followed *Lewis* in finding that jurisdiction over an offense committed in the former district's territory remains with that district, *Hayes v. United States,* 407 F.2d 189 (5th Cir.), *cert. dismissed,* 395 U.S. 972, 89 S.Ct. 2133, 23 L.Ed.2d 777 (1969); *Westover v. United States,* 394 F.2d 164 (9th Cir. 1968), unless the defendant makes a specific claim for transfer, see *Mizell v. Vickrey,* 36 F.2d 327 (10th Cir. 1929); *Briggs v. White,* 32 F.2d 108 (8th Cir. 1929); *cf. Quinlan v. United States,* 22 F.2d 95, 98 (5th Cir. 1927), *cert. denied,* 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928) (decided prior to *Lewis* ). While subsequent cases have also followed *Lewis* in describing the last phrase of § 3240 (or the same phrase as it appeared in § 59) [2] in language suggesting a "right" to transfer, *Briggs, supra* ; *Hale v. United States,* 25 F.2d 430 (8th Cir. 1928), such language, like the language in *Lewis,* has always been *dicta* and has always been couched either in ambiguous phrasing, as in *Lewis, supra*

---

1. Rule 19 was rescinded effective July 1, 1966. Rule 20 covers transfers from a district for plea and sentencing. Rule 21(a) covers transfers for trial for prejudice in the district; Rule 21(b) covers transfers for trial "For the convenience of parties and witnesses and in the interests of justice." Rule 22 covers timing of a defendant's motion to transfer.

2. The phrase is virtually identical: "unless the court, upon the application of the defendant, shall order the *cause* ["case" in § 3240] to be removed to the new district or division for trial" (emphasis added). See *Quinlan, supra,* at 97.

("*claim* the right" [emphasis added] rather than "exercise the right"), or in *Briggs, supra* at 109 (the trial and subsequent proceedings should be in [the old] district "unless the defendant should *apply* for an order removing the trial" [emphasis added]; defendant made no claim that such application had been made) or by a finding of such circumstances as would satisfy the requirements of Rule 21 for a transfer. In *Hale, supra,* for instance, defendants moved to transfer to a specific county redistricted from the Western District of Oklahoma to the Northern District of Oklahoma under § 59 and § 40 of the Judiciary Act of 1911;[3] the court recited the convenience factors, such as the distance of the respective courthouses to the location of the alleged offense, the location of witnesses and the expense to defendant of securing attendance of witnesses at trial, *id.* at 432, favoring the transfer; treated the motion primarily as one to remove to a specific county; noted that the Western District court had no authority to transfer cases to a specific county in another district under § 40, and that no motion had been made under § 59 "for transfer to the Northern *District*" (emphasis added); but that "[i]f such application had been made, it would have been the duty of the District Court for the Western District to transfer the case to the Northern District generally," *id.* at 433, in effect incorporating the convenience test of current Rule 21(b) into the court's § 59 [now § 3240] analysis. See also *Mizell v. Vickrey, supra* (transfer clause of § 59 could have *no* application to a criminal offense committed in territory now part of a new district, since the new district could never have jurisdiction over an offense committed prior to the creation of the new district [note that this interpretation of jurisdiction in criminal offenses is now modified under Rule 21(b) so that transfer of criminal cases is permissible under that Rule whether or not the transferee court would have had

original jurisdiction over the case, see discussion of Rule 21(b) *infra* ]); *cf. United States v. Rosenberg,* 226 F.Supp. 199, 200–01 (S.D.Fla.1964) (noting that defendant in certain tax cases may transfer *as of right* under 18 U.S.C. § 3237(b) to the jurisdiction where the defendant resides; and suggesting that defendant's alternate motion for transfer under § 3240 was not as of right, since the court noted that the Government "had no objection"; 3237(b) motion granted); *cf. Mizell v. Beard,* 25 F.2d 324 (N.D. Okl.1928) (finding that new district without jurisdiction over offenses committed prior to the creation of the new district).

Finally, the policy considerations underlying § 3240 and the venue provisions in criminal cases generally suggest that if the district in which the site of the alleged crime was initially located has jurisdiction over a crime allegedly committed prior to the redistricting as if that district had retained its original jurisdiction, see *Lewis, supra; Westover, supra* ; and if the new district has no original jurisdiction over the offense by virtue of the redistricting, see *Mizell v. Vickrey, supra* ; then the defendant who wishes to transfer his case from the original district to the new district is in the same position as any defendant wishing to transfer a case to another district for convenience factors under Rule 21(b), and should not be placed in a better position than any other defendant by the fortuitous transfer of the territory where the crime was allegedly committed from one federal district to another, see *Westover, supra* at 166. For the foregoing reasons, defendant in this case is not entitled to an automatic transfer under 18 U.S.C. § 3240.

**B. Rule 21(b) motion**

[3–5] The Court will, however, grant defendant's motion to transfer under Rule 21(b), providing for transfers for the convenience of parties and witnesses and in the interests of justice.[4] In *Platt v. Minnesota*

---

**3.** Judiciary Act of 1911, c. 231, § 40, 36 Stat. 1100, formerly codified at 28 U.S.C. § 101 (1940 ed.), now codified at 18 U.S.C. § 3235, on venue in capital cases. The section now reads: "The trial of offenses punishable with death shall be

had in the county where the offense was committed, where that can be done without great inconvenience."

**4.** Rule 21(b) provides:

*Mining & Mfcting. Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), the Supreme Court noted 9 factors to be considered in making a determination under Rule 21(b): (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; and (9) docket conditions in each district. *Platt* at 243–44, 84 S.Ct. at 771–772; see also *United States v. Keuylian*, 602 F.2d 1033, at 1037–1038 (2d Cir., 1979). In addition, a court may consider "any other special elements which might affect the transfer." *Platt, supra,* 376 U.S. at 244, 84 S.Ct. at 771; *Keuylian, supra,* at 1037. Under the Rule as amended in 1966, a court does not need to consider whether the transferee court would have original jurisdiction over the case. *United States v. Williams*, 437 F.Supp. 1047, 1051 (W.D.N.Y. 1977). The decision to transfer is at the discretion of the trial judge. *Platt, supra; Keuylian, supra; Williams, supra.*

In this case, the factors under consideration suggesting trial in the Northern District outweigh the factors suggesting trial in New York City, namely the convenience of the Government attorneys, and the delay which will inevitably result from a transfer to another district.

■ The next term in the Northern District at which defendant could be tried is a term beginning in Albany on November 14. Albany is approximately 50 miles from Kingston, New York, the home of defendant Ronder and the location of the alleged crime, while New York City is approximately 100 miles away. All of the other possible witnesses in the case also live in or near Kingston. While the documents in the case are currently in New York City, these documents are not so extensive that they could not be moved to Albany (the documents were originally brought to New York City from Kingston, and occupy "at most" two file drawers). All these factors favor an Albany location for the trial. In addition, an Albany location would be less disruptive of defendant Ronder's business, and less expensive to defendant Ronder, who could commute daily from his home in Kingston to Albany during the trial, but could not conveniently do so to New York City. Weighed against these considerations, and favoring trial in New York, are the inconvenience to the Government of trying the case in Albany, and the docket conditions of the respective courts, in particular, the delay between the trial date set in this court (October 22) and the possible trial date in the Northern District (since the Albany term will not begin until November 14), which may infringe upon both defendant's Sixth Amendment right to a speedy trial, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. New Buffalo*, 600 F.2d 368 (2d Cir. 1979); *United States v. Lane*, 561 F.2d 1075 (2d Cir. 1977); *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974), *cert. denied, sub nom. Emprise Corp. v. United States*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), and on defendant's interest and the Government's and the Court's interest in providing a prompt trial under the Speedy Trial Act of 1964, 18 U.S.C. § 3161 *et seq.*,[5]

"For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district."

5. Defendant has also asserted a Sixth Amendment claim to be tried in his own vicinage by jurors drawn from Ulster County or from a similarly rural population base in support of his motion to transfer. This claim is clearly irrelevant insofar as it alleges exclusion of Ulster County residents since under the Sixth Amendment, the Southern District remains the district with jurisdiction over the offense for purposes

of trial and jury selection, see *Lewis, supra; Westover, supra; Hale, supra; Mizell v. Beard, supra; cf. United States v. Ponder*, 444 F.2d 816 (5th Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); *United States v. Gottfried*, 165 F.2d 360 (2d Cir.), *cert. denied*, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948); and since the location of defendant's residence is not relevant for venue purposes, *Platt, supra; United States v. Walker*, 559 F.2d 365 (5th Cir. 1977), unless there are allegations that the prosecution is or appears to be manipulating its choice of jurisdic-

*as amended by* Speedy Trial Act Amendments of 1979, P.L. No. 96–43, approved August 2, 1979. The Government's convenience is, however, a factor given little weight when other considerations of convenience suggest transfer of a trial under Rule 21(b), see *United States v. Olen*, 183 F.Supp. 212 (S.D.N.Y. 1960), *mandamus denied sub nom. United States v. Cashin*, 281 F.2d 669 (2d Cir. 1960). In addition, the delay of three weeks does not appear to infringe significantly on defendant's Sixth Amendment right to a speedy trial). The delay may be too short even to trigger the Sixth Amendment inquiry laid down by *Barker*, see *Barker, supra*, 407 U.S. at 530, 92 S.Ct. at 2192; in addition, defendant has requested the transfer, which makes a subsequent finding of a Sixth Amendment violation due to delay occasioned by the transfer unlikely, see *Barker, supra* ; *New Buffalo, supra* ; *Lane, supra* (when continuances granted at defendant's request to prepare for trial, no Sixth Amendment violation). Finally, while the Speedy Trial Act time limits required trial of this defendant by August 27, 1979, this Court has already made a specific finding on the record under § 3161(h)(8) that a continuance until September 19, 1979 was warranted to enable defendant's new counsel to prepare for trial, and that the period from September 20 to October 29 during which this Court considered defendant's pending motions is excludable under § 3161(h)(1)(F), (J) and (h)(8); and an extension of time pending transfer of this case to the Northern District is specifically excluded from the computation of Speedy Trial Act time periods by § 3161(h)(1)(G). Clearly, the equities lie with defendant and the action will be transferred to the Northern District of New York.

However, to avoid burdening the transferee judge with a number of motions ripe for decision, this Court will proceed to dis-

pose of certain pending motions before transfer.

**2.** *Wharton's Rule Claim*

■ Defendant has moved to dismiss Count 1, the conspiracy count of the indictment under 18 U.S.C. § 371, on the ground that indictment for the conspiracy charged here and for a substantive violation of 26 U.S.C. § 7206(2) violates the principle of Wharton's Rule that a defendant shall not be charged with conspiracy to commit a substantive offense where the substantive offense necessarily "requires the participation of 2 [or more] persons for its commission," *Iannelli v. United States*, 420 U.S. 770, 774, 95 S.Ct. 1284, 1288, 43 L.Ed.2d 616 (1975), *citing* 1 R. Anderson, Wharton's Criminal Law & Procedure § 89 (1957). 26 U.S.C. § 7206(2) provides that any person who

"Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document"

shall be guilty of a felony. To establish a violation of this section, the Government must prove

"only (1) that [defendant] aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return, (2) that the return was fraudulent or false as to a material matter, and (3) that the act of the [defendant] was willful."

*United States v. Perez*, 565 F.2d 1227, 1233–34 (2d Cir. 1977). The innocence or guilty knowledge of the taxpayer for whom the return was filed has been held to be irrele-

---

tion to gain a favorable forum, see *United States v. Johnson*, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944), *United States v. Fernandez*, 480 F.2d 726 (2d Cir. 1973), a claim not supportable here. Further it does not appear that defendant has made the specific showing

required for a challenge to the array, on geographic, economic or racial grounds, see *United States v. Test*, 550 F.2d 577 (10th Cir. 1976), in the absence of a showing of apparent or actual prosecutorial misconduct, see *Fernandez, supra*, and discussion under Point 3, *infra*.

vant in a prosecution under this section. *United States v. Jackson*, 452 F.2d 144, 147 (7th Cir. 1971); see *United States v. Conlin*, 551 F.2d 534 (2d Cir. 1977); *United States v. Haimowitz*, 404 F.2d 38; *United States v. Kelley*, 105 F.2d 912, 917 (2d Cir. 1939) ("The purpose [of the statute] was very plainly to reach the advisers of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent").

■ The Supreme Court outlined both the provisions of and the rationale underlying Wharton's Rule in *Iannelli, supra*. Under the Court's analysis, the general criminal law rule is that a conspiracy charge does not merge with a substantive charge: because the conspiracy poses a danger apart from the danger presented by the substantive offense, a conspiracy count may be brought concurrently with a substantive count. *Iannelli, supra* 420 U.S. at 778, 95 S.Ct. at 1290. Wharton's Rule presents an exception to this general rule for offenses such as adultery, incest, bigamy and duelling, *Iannelli, supra* at 782, 95 S.Ct. at 1292; *United States v. Rosenblatt*, 554 F.2d 36, 42 n.7 (2d Cir. 1977), where (1) there is general congruence between the agreement and the completed substantive offense; and (2) the agreement poses no harm to society other than the harm contemplated under the substantive offense, *Iannelli, supra*, 420 U.S. at 782, 95 S.Ct. at 1292. Because the substantive offense and the conspiracy charged must be "generally congruent" for the Rule to apply, the Rule has been applied only where the substantive offense charged requires "concerted criminal activity, a plurality of criminal agents," *id.* at 785, 95 S.Ct. at 1293, rather than one defendant acting criminally in conjunction with innocent parties, see *Jeffers v. United States*, 432 U.S. 137, 147, 97 S.Ct. 2207, 2214, 53 L.Ed.2d 168 (1977) (where statutory violation could occur even though defendant acted only in conjunction with "innocent dupes," *Iannelli* holding controls and Rule does not apply); *Gebardi v. United States*, 287 U.S. 112, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932) (Wharton's Rule would not bar prosecution under

both Mann Act and general federal conspiracy statute where criminal transportation of woman across state lines was carried out without woman's consent). Moreover, under the "harm to society" analysis, if the agreement underlying the conspiracy charged encompasses the substantive offense charged, but also contemplates participation by third parties in a way that will enhance the dangers presented by the substantive offense, *Iannelli, supra*, 420 U.S. at 782 n.14, 95 S.Ct. at 1292 n.14, or "will produce agreements to engage in a more general pattern of criminal conduct," *id.* at 784, 95 S.Ct. at 1293, the Rule does not apply. Finally, the Supreme Court noted that the Rule was simply a presumption, which could be overridden in the face of a discernible legislative judgment that a conspiracy which otherwise would merge with a substantive offense under the Rule should not so merge. *Id.* at 786, 95 S.Ct. at 1294.

■ Under this analysis, Count 1 of the indictment cannot be dismissed on the basis of Wharton's Rule. First, the alleged violation of § 7206(2) is not "generally congruent" with the conspiracy charged: the substantive offense charged here does not require proof of agreement between two "criminal agents," see *Iannelli, supra* at 785, 95 S.Ct. at 1293; *Jeffers, supra*, while the conspiracy count requires proof of such agreement, so that the conspiracy charge is not on its face duplicative of the substantive charge. Second, the agreement alleged under the conspiracy count here suggests potential harm to society beyond the harm contemplated under the substantive count in two ways: the conspiracy count argues participation by a third party, Grace Ede, the bookkeeper of Ulster Electric Supply Company, not indicted or mentioned under the substantive count; and the conspiracy count is based on actions occurring over a three-year period, rather than on the single filing for a single calendar year underlying the charge in Count 3.

For these reasons, the motion to dismiss Count 1 of the indictment under Wharton's Rule is denied.

### 3. Grand Jury Selection

Defendant has, in addition, moved to dismiss the indictment under Rule 6(b)(2), F.R. Crim.P. and 28 U.S.C. § 1867(a) on the grounds that the indictment was returned by a grand jury selected from an array which failed to represent an adequate cross-section of the community, since the grand jury indicting defendant was selected under a district plan which allowed persons residing over 50 miles from the United States Courthouse in Foley Square to be excused from grand jury service on individual request. Defendant asserts that this excuse provision was a systematic exclusion of a cognizable geographic group, residents of counties in the Southern District other than New York, Bronx, Westchester and Rockland counties, and of a cognizable social and economic group, "rural" residents, and a systematic distortion of the racial composition of the array when compared to the population of the Southern District as a whole, in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* ("statute" or "Act") and of the Fifth and Sixth Amendments.

### A. The Constitutional Standard

 Under the Fifth and Sixth Amendments, an individual grand jury need not reflect the composition of the community from which it was drawn, *Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir. 1976); *United States v. Fernandez*, 480 F.2d 726 (2d Cir. 1973); *United States v. Guzman*, 337 F.Supp. 140, 143 (S.D.N.Y.1972), *aff'd*, 468 F.2d 1245 (2d Cir. 1972), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973), but must be drawn from a "fair cross-section of the community," *United States v. Kennedy*, 548 F.2d 608, 614 (5th Cir. 1977); *United States v. Test*, 550 F.2d 577, 584 (10th Cir. 1976) ("*Test II*"); *Guzman, supra* at 143. A defendant may establish a *prima facie* case of improper grand jury selection under the constitutional standard by establishing absolute exclusion or systematic underrepresentation of a cognizable, distinct class, see *Castaneda v. Partita*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1976). To show that a group

is "distinct" or "cognizable," a defendant must show (1) that the group is defined and limited by some factor (*i. e.,* that the group has a definite composition); (2) that a common thread or basic similarity in attitude or ideas or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process, *Test II, supra* at 591; *Guzman, supra* at 143–44. A defendant alleging a constitutional jury selection violation must show that a cognizable group has been totally excluded under the selection process (so that discriminatory intent may be presumed), see *Castaneda, supra; Test II, supra*; or that underrepresentation of the group was so statistically substantial that the underrepresentation is presumed to be "systematic" or purposeful, *Castaneda, supra* (40% discrepancy found significant); but see *Anderson, supra*, at 685, and *United States v. Huber*, 457 F.Supp. 1221, 1226 (S.D.N.Y.1978) (not every showing of disparity, or even of statistically significant disparity, meets this test); or that a lesser degree of underrepresentation was combined with a "selection procedure . . . susceptible of abuse or . . . not racially unneutral," *Castaneda, supra*, 430 U.S. at 594, 97 S.Ct. at 1280; *Anderson, supra* at 685.

### B. The Act

The Act establishes a more detailed system of jury selection procedures for federal district courts. It first provides generally that a litigant in federal court has the right to a grand jury "selected at random from a fair cross-section of the community," 28 U.S.C. § 1861, and that no citizen shall be excluded from grand jury service "on account of race, color, religion, sex, national origin, or economic status," 28 U.S.C. § 1862, a test substantially equivalent to the standard developed under the Fifth and Sixth Amendment, *Kennedy, supra*; *Test II, supra* at 585, although the statute is more rigorous in its requirement for randomness in the selection process, *Kennedy, supra*, at 612, and may impose a stricter

duty of ensuring that the fair cross-section requirement is met, *Anderson, supra* at 685 n.1; *Fernandez, supra* at 733.

Section 1863 of the Act requires each federal judicial district to establish a written jury selection plan implementing §§ 1861 and 1862. This section further authorizes district plan provisions under which jurors may be excused on individual request for certain specified reasons; as of May 9, 1978, the date on which the Grand Jury indicting defendant Ronder was impanelled, the section specified that the plan:

> "shall . . . fix the distance, either in miles or in travel time, from each place of holding court beyond which prospective jurors residing shall, on individual request therefor, be excused from jury service on the ground of undue hardship in travelling to the place where court is held."

> 28 U.S.C. § 1863(b)(7) (superseded by Act of November 2, 1978, Pub.L.No. 95–572, § 2(a), 92 Stat. 2453).[6]

Provisions in federal district jury selection plans which permit hardship excuses based on distance from the courthouse, in accordance with § 1863(b)(7), have been found to be consistent with both the statutory goals outlined in §§ 1861 and 1862 of the Act and the requirements of the Fifth and Sixth Amendments for selection of juries, *United States v. Olson*, 576 F.2d 1267 (8th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978) (150-mile distance hardship excuse approved); *United States v. Lewis*, 504 F.2d 92, 99 (6th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) (70-mile distance excuse approved); *Fernandez, supra* at 734 (distance excuses "not in themselves suspect selection criteria"); *United States v. Valentine*, 472 F.2d 164 (9th Cir. 1973) (40-mile distance excuse approved).

Under § 1867(a) of the statute, a defendant in a criminal case may move to dismiss the indictment for "substantial failure to comply" with the provisions of the Act in selecting a grand jury. In addition, a party who makes a *prima facie* showing of "substantial failure to comply" is entitled under § 1867(d) to an evidentiary hearing to present testimony by the jury clerk or commission, the relevant supporting documents used by the clerk or the commission in selecting prospective jurors, and any other relevant evidence in support of the motion do dismiss the indictment under § 1867(a). To obtain dismissal of an indictment under § 1867(a) or an evidentiary hearing under § 1867(d), a defendant does not have to show that the claimed statutory violation resulted in actual prejudice, *Kennedy, supra* at 612, *Guzman, supra* at 142, or that the defendant was a member of the group allegedly excluded from the array. *Test II, supra* at 581 n.3; *Guzman, supra* at 142.

Rule 6(b)(2), F.R.Crim.P. provides that a motion to dismiss the indictment based on objections to the grand jury may be made in accordance with the conditions prescribed by the Act.

▬ To show "substantial failure" to comply with the Act for purposes of a § 1867(a) or (d) motion, a defendant must show that a cognizable group has been systematically excluded from or underrepresented in the array, *Guzman, supra* at 146; *United States v. Deardorff*, 343 F.Supp. 1033, 1043 (S.D.N.Y.1971). The test for whether a group is "cognizable" under the § 1867(a) or (d) substantial failure standard is equivalent to the test for a cognizable group under the constitutional standard described above, see *Test II, supra; Guzman, supra*. As under the constitutional standard, a defendant may show that a group has been "systematically" excluded or underrepresented under this section of the Act by showing that the group has been (1) totally excluded under the selection procedure, *Test II, supra* ; or (2) substantially underrepresented, see *United States v. Jen-*

---

**6.** The current version of this provision is found at 28 U.S.C. § 1863(b)(5) (plan shall specify persons to be excluded on individual request on grounds of "undue hardship" or "extreme inconvenience" and § 1869(j) ("undue hardship" or "extreme inconvenience" as a basis for excuse " . . . shall mean great distance, either in miles or travel time, from the place of holding court").

kins, 496 F.2d 57, 65–66 (2d Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975) (comparing discrepancies between the number of blacks on voter registration lists and the proportion of blacks in the underlying population to determine whether the disparity required resort to supplementary sources of potential black jurors, as suggested in the legislative history of the Act; the court found that the statistical test to be used was the numerical effect on the composition of the jury panel; a difference of one black juror in a panel of 60 jurors was not found to be substantial); see also Anderson, supra at 685 n.1; or (3) underrepresented to a lesser degree, when the underrepresentation is accompanied by other factors suggesting abuse of the jury selection process, see Fernandez, supra. A defendant must show, however, more than a simple statistical deviation, Jenkins, supra at 65 ("[t]he Act was not intended to require precise proportional representation of minority groups on grand or petit juror panels"); Fernandez, supra at 733. A defendant who shows a statistical underrepresentation too low to constitute a constitutional claim may nevertheless have stated a claim under the Act, since in certain cases, as noted above, the Act may impose a higher duty to take affirmative steps to remedy discrepancies between the composition of jury panels and the composition of the underlying community, Anderson, supra at 685, n.1.

In challenges based on the operation of excuse provisions specifically permitted under the Act and found to be constitutional—such as the distance excuse in question here—a defendant must show that the statistical underrepresentation or exclusion resulting from the operation of the excuse is of a type or an extent not contemplated when the specific excuse provision was adopted. See Fernandez, supra at 733 (noting that use of the individual excuses expressly permitted by § 1863(b) "may have the inevitable effect of detracting from the representative character of the venires"); cf. Matter of Archuleta, 561 F.2d 1059, 1063 (2d Cir. 1977) (must show that exclusion is "substantial and prejudicial" when jury se-

lected in accordance with procedures of the Act); United States v. Gottfried, 165 F.2d 360, 364 (2d Cir.), cert. denied, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948); United States v. Grey, 355 F.Supp. 529, 532 (D.C. Okl.1973) (on challenges to effect of statutory excuse provisions generally); United States v. Leonetti, 291 F.Supp. 461, 474 (S.D.N.Y.1968).

## C. Defendant's Contentions

In this case, defendant contends that the distance excuse provision in effect under the Southern District of New York Plan for Random Selection of Grand and Petit Jurors ("Plan") when the grand jury indicting defendant was selected violated the defendant's statutory and constitutional right to a grand jury panel representing a fair cross-section of the community, and that this violation is sufficiently substantial to (1) allow defendant to hold an evidentiary hearing under § 1867(d), and (2) warrant dismissal of the indictment under § 1867(a). These allegations are not supported by the record here.

First, it is apparent that defendant has failed to demonstrate, as required by § 1867(a) or (d) or Rule 6, that the existence of the distance excuse provision in the Southern District Plan is in itself a "substantial failure" to comply with the Act or a violation of the underlying constitutional requirements. The Plan under which this grand jury was selected was adopted on June 26, 1968 by the District Judges of the Southern District, and approved by the Judicial Council of the Second Circuit and the Chief Judge of this district as being in compliance with the Act, under the procedure established by § 1863 of the statute.

The 1968 Plan provided for random selection of jurors from all counties of the Southern District for the Master Wheel from which the monthly Qualified Wheel is drawn, which in turn provides the source of jurors drawn for each individual array. On May 9, 1978, when the grand jury array at issue here was selected, the Plan included a provision excusing upon individual request

"any person who resides more than 50 miles from the United States Courthouse at Foley Square, New York, N.Y.," Plan, Article V(8); this provision tracked the language of the contemporaneous provision of 28 U.S.C. § 1863(b)(7), see text at note 6, *supra*.[7] The excuse provision in question was adopted in accordance with the procedures established by the Act, and that provision conformed to the distance excuse provision outlined in the Act at the time the provision was adopted in the Southern District. Furthermore, the distance excuse provision of the Act has been upheld under both constitutional and statutory challenges, see *Olson, supra; Fernandez, supra; cf. Leonetti, supra* (upholding distance excuse under prior statute, Constitution).[8] Under these circumstances, defendant cannot support a § 1867(a) or (d) claim by challenging the excuse provision on its face.

█ Second, it is clear that the fact that the selection process may have excused all prospective jurors from defendant's county of residence is not in itself of constitutional or statutory significance. *United States v. Ponder*, 444 F.2d 816 (5th Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); see *Lewis v. United States, supra*, 279 U.S. at 72, 49 S.Ct. at 258; *Westover, supra; Jeffers v. United States*, 451 F.Supp. 1338 (D.C.Ind.1978).

Third, although defendant has specified three possible "cognizable groups" and has made specific statistical allegations of systematic exclusion or underrepresentation of each group, defendant has not alleged facts which show a substantial failure to comply with the Act, as required by § 1867(d) for an evidentiary hearing and by § 1867(a) for dismissal of the indictment, resulting from the application of the excuse provision when the statistical disparities show in defendant's affidavit are considered in light of the statutory and constitutional recognition of the need to excuse individually certain persons from jury service based on the hardship of attendance at court.

### Geographic discrimination

Defendant first alleges that the excuse provision, as applied, impermissibly excluded all members of a geographic group, residents of counties in the Southern District other than New York, Bronx, Westchester and Rockland counties. Although it is not clear that this group would meet the cognizability requirements of *Test II, supra*, and *Guzman, supra*, the Court will assume that this group is cognizable for purposes of a statutory or constitutional challenge in line with the suggestion in *Fernandez, supra; Gottfried, supra*. Defendant has alleged that this group was totally excluded from the array. An allegation that a group was totally excluded would in other instances be sufficient to show a "substantial failure" to comply with the Act; such a showing has been found insufficient to constitute a constitutional violation or a substantial violation of the Act, however, where, as here, the geographic disparity resulted from the exercise of hardship excuses based on distance from the courthouse, *United States v. Lane*, 574 F.2d 1019, 1022 (10th Cir. 1978); *Test II, supra* at 582 n.4; *Fernandez, supra* at 734 (though distance excuses "have the inevitable effect of tending to concentrate the representation of the venire of

---

7. This provision was modified effective January 16, 1979. Article V(8) of the Plan now provides for an excuse upon individual request for "any person who resides a great distance, either in miles or travel time, from the place of holding court." See amendment to 18 U.S.C. § 1863, note 6 *supra*.

8. Defendant has further alleged that the excuse nature of the provision destroys the random nature of the selection process, citing *Kennedy, supra*. While *Kennedy* did suggest that use of volunteers might destroy the randomness of the selection, it is not at all clear that persons requesting a statutory excuse, such as the distance hardship excuse, are "volunteers" within the meaning of that case, see *Kennedy, supra* at 612 n.6; *Grey, supra*. In addition, the *Kennedy* court went on to hold that to make a showing sufficient for a dismissal under § 1867(a) on randomness grounds, or to present a Fifth Amendment violation, the defendant in that case would have to show exclusion or underrepresentation of a "discernable class of persons" as a result of the use of volunteers, *id.* at 612–14, the same standard discussed in the text above, see *infra*, for defendant's allegations here.

those living relatively close to the courthouse . . . this may be without legal consequences"); see *Leonetti, supra* at 474 (distance hardship excuse approved under the Constitution and prior federal jury selection statute even though this "necessarily amounts to eliminating the individual from the system"); *United States v. Kelly,* 349 F.2d 720 (2d Cir. 1965) *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), and where no other factors led to an "appearance of abuses," *Fernandez, supra* at 734–35. In *Fernandez,* the Second Circuit questioned distance excuses applied in the Eastern District of New York in conjunction with removal of a case to the second district courthouse in Westbury, Long Island when (1) the excuse was granted for a relatively short distance, 25 miles; (2) the distance excuse was apparently applied twice, in an arbitrary manner, first to exclude persons living 25 miles beyond the Cadman Plaza courthouse in Brooklyn, then to further exclude persons living 25 miles beyond the Westbury courthouse; (3) the removal was carried out solely for the judge's convenience; and (4) the combination of removal and distance excuses possibly resulted in significant underrepresentation of non-white minorities on the venue list. Since defendant here has not alleged any of the first three abuse factors noted in *Fernandez,* and since defendant's allegations of underrepresentation of racial or socioeconomic groups, in addition to the alleged underrepresentation of a geographic group, resulting from the application of the distance excuse are not, on this record, substantial, see discussion *infra,* defendant has not shown a constitutional violation or a substantial violation of the Act under § 1867(a) or (d) on geographic grounds.

## *"Rural" Socioeconomic Group*

Defendant next alleges that the excuse provisions contained in the Southern District jury selection plan operate to produce systematic underrepresentation of "rural" jurors. It appears that this group, like the geographical group discussed above, is cognizable under the statutory and constitutional tests: although this circuit has not specifically considered the cognizability of such a group under the criteria suggested in *Test II, supra* and *Guzman, supra,* the Second Circuit has twice considered "rural" jurors as a cognizable group under constitutional standards and prior jury selection statutes, *Kelly, supra; Gottfried, supra;* see also *Leonetti, supra,* and once considered the potential exclusion of economic and social groups under the Act as a result of the Eastern District distance excuse provisions, *Fernandez, supra.*

It is not clear, however, that defendant has made a showing that the underrepresentation of rural jurors he alleges was "systematic" within the meaning of the "substantial failure" test. First, defendant has shown that a statistical discrepancy exists, but has not alleged any facts which would support a claim that the Southern District excuse provision was abusive, see *Huber, supra* at 1226 n.5 (noting that no opportunity for abuse or manipulation similar to that found in *Castaneda* exists under the Southern District jury selection plan itself), or presented the appearance of abuses, see *Fernandez, supra;* therefore, the statistical discrepancies would have to rise to the level of the *Jenkins* test to be significant under the Act and to the level of the *Castaneda* test to be significant under the Constitution. The underrepresentation which defendant has alleged here[9] falls be-

9. Defendant suggests two possible measurements of "rural" population, population living in areas of less than 2,500 persons and population living in areas of less than 25,000 persons. Defendant cites figures from the 1970 Census showing that 1.5% of the population of New York, Bronx, Westchester and Rockland Counties live in areas of under 2,500 persons and 16% live in areas of less than 25,000 persons; while in the Southern District as a whole, 11% of the population live in areas of less than 2,500 persons (a 9.5% difference from New York, Bronx, Westchester and Rockland counties) and 28% live in areas of less than 25,000 persons (a difference of 12% from New York, Bronx, Westchester and Rockland counties). In addition, defendant cites the Census Department's grouping of New York, Bronx, Westchester and Rockland counties in the New York City Standard Metropolitan Statistical Area (which defendant alleges implies that these counties are almost exclusively "urban" and

low the level found significant in *Castaneda*, though the figures—a decrease in "rural" jurors of five to six potential jurors out of sixty under defendant's figures—is higher than the one out of sixty discrepancy found insignificant under the Act in *Jenkins, supra*.[10] Second, in a case such as this, where the statistical underrepresentation results from the exercise of a valid excuse provision, it appears that any statistical disparity under the *Jenkins* test should be weighed against the underrepresentation to be expected under the excuse provision in order to determine whether the underrepresentation constitutes a substantial failure to comply with the Act, since the Second Circuit found in *Fernandez* that a certain amount of underrepresentation was an inevitable result of the exercise of statutorily-approved hardship excuses under the new Act; and since the *Fernandez* court further found that hardship excuses based on distance from the courthouse were presumptively valid under the new Act, citing *Kelly, supra* and *Leonetti, supra*, two of the three pre-Act Second Circuit cases upholding the 50-mile distance excuse in the Southern District. This is precisely the type of balancing carried out in *Gottfried, supra*, rejecting a 1948 constitutional and statutory challenge to the Southern District distance excuse; *Kelly, supra*, rejecting such a challenge in 1965; and *Leonetti, supra*, rejecting such a challenge in 1968. *Fernandez* thus implies that the *Gottfried, Kelly* and *Leonetti* balancing should apply under the 1968 Act. Defendant's allegations of statistical disparity between the rural jurors in the array and rural jurors in the underlying population of the Southern District in fact fall within the range of statistical disparity found acceptable in *Gottfried, Kelly* and *Leonetti*.[11] The challenge based on under-

"suburban" rather than "rural"), and the fact that residents of the counties excluded from the grand jury pool constitute 16% of the population of the Southern District as a whole.

Measured under the *Jenkins* test, defendant's figures show a disparity of 6 potential jurors out of 60 (if "rural" jurors are measured by reference to persons living in areas of under 2,500 population) or 7 jurors out of 60 (if potential "rural" jurors are measured by reference to persons living in areas of under 25,000 population).

10. The Court notes also that the *Jenkins* statistical test was developed to measure the significance of exclusion of a racial group; and that one of the strongest purposes underlying the Act was elimination of underrepresentation of racial minorities on jury panels, so that a racial group is *presumptively* cognizable under the Act, see *Deardorff, supra*. The test may be somewhat less rigorous when applied to a rural socioeconomic group.

11. In *Gottfried, supra*, the Second Circuit considered a claim very similar to the claims raised by defendant here: that the Southern District's failure to draw jurors from counties other than New York, Bronx and Westchester violated the Constitution and the prevailing statutory standard for jury selection. The court found that where the 8 excluded counties held 8% of the total population of the Southern District; where 16% of the *population of the entire* Southern District was "rural" (measured by percentage of persons living in areas of under 25,000 people, since Kingston, New York—the home of the defendant in that case, and incidentally, of the defendant in this case—had a population of 25,000), while 7% of the population of New York, Bronx and Westchester counties was "rural" by this standard (in *Jenkins* terms, a decrease in potential "rural" jurors from 10 out of 60 to 4 out of 60); and when the jury selection statute in effect at that time, as well as every preceding jury selection statute, permitted hardship excuses based on distance from the courthouse "in the interest . . . of economy, and of lessening the burden of attendance." *id.* at 364, the distance excuse provisions of the Southern District satisfied both the statutory and the constitutional "fair cross-section" standards.

In 1965, the Second Circuit considered the *Gottfried* issue again in *Kelly, supra*. The court took judicial notice that the population of the excluded eight counties was 770,000, while the population of New York, Bronx and Westchester counties was 3,930,000 (so that jurors from the excluded counties represented 16.4% of the total population of the Southern District at that time), and on this basis concluded that *Gottfried* was still controlling, *Kelly* at 779. Here, defendant has alleged that the population of the seven Southern District counties other than New York, Bronx, Westchester and Rockland is 16% of the population of the entire Southern District, a percentage comparable to that in *Kelly, supra*; and that exclusion of the residents of the other seven counties in the district leads to a decrease in "rural" jurors from 17 out of 60 to 10 out of 60 in *Jenkins* terms (if "rural" is measured using a cutoff figure of geographical areas with a population of less than 25,000 persons), or from 7 out of 60 to 1 out of 60 potential jurors, if "rural" is

representation of "rural" jurors in the array must therefore be denied.

*Racial Discrimination*

Defendant's final allegation is that the use of the distance excuse provision led to a distortion of the racial composition of the array when compared to the racial composition of the Southern District as a whole. In support of this allegation, defendant cites census data showing that the population of New York, Bronx, Westchester and Rockland counties is 80% white, while the population of the entire Southern District is 82% white. It is unclear that white persons form a cognizable group for either statutory or constitutional purposes, under the criteria outlined in *Test II, supra* and *Guzman, supra*; see also *Deardorff, supra.* Assuming, however, that any racial group is presumptively cognizable, see *Deardorff, supra* at 1043, defendant has failed to show a statistical disparity which is significant either in statutory terms, see *Jenkins* at 65 (2.15% discrepancy not significant), or in constitutional terms, see *Anderson* at 685 (2.4% discrepancy not significant).

*Request for Discovery of Grand Jury Selection Materials*

■ Finally, defendant has moved under § 1867(f) for an order permitting inspection of the records and papers used by the jury clerk of the Southern District in connection with the jury selection process. While it does not appear that defendant could thereby learn any facts which would further the defendant's present § 1867(d) and (a) or Rule 6 motions, see *Deardorff* at 1043, § 1867(f) gives defendant an unconditional right to inspect the relevant documents, *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975) ("*Test I*."); *Govt. of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979) (denial of motion to inspect under § 1867(d) reversible error "[s]ince the appellants' right to inspection was unqualified, whether or not the accompanying affidavit established a *prima facie* case of defective jury selection process");

*People of Territory of Guam v. Palomo*, 511 F.2d 255, 258 (9th Cir. 1975) (noting that *Test I* overruled holdings tying § 1867(f) to § 1867(d) criteria in *Guzman, Grey* and *Deardorff, supra*). It is unclear from this record whether or not the defendant has exercised that unconditional right; therefore, the motion to inspect will be granted. In addition, the motions for an evidentiary hearing and to dismiss the indictment will be denied without prejudice in the event defendant wishes to renew the motion after inspection of such documents.

4. *"Open-Ended" Grand Jury*

■ Next, defendant has moved to dismiss the indictment on the ground that the procedure under which a grand jury investigation was initiated, as well as subsequent disclosure of information obtained by the grand jury to the Internal Revenue Service "IRS", violated the provisions of Rule 6(e), F.R.Crim.P., governing secrecy of grand jury proceedings. Defendant bases this motion first on a challenge to the procedure described in the version of the Internal Revenue Manual in effect when the initial investigation of Ulster Electric was in progress, under which an IRS investigation could be referred to the Justice Department prior to completion of that investigation with a recommendation that a grand jury investigation be conducted (a so-called "open-ended grand jury inquiry"). Defendant contends that this procedure allowed the IRS to further its own investigation by use of the grand jury's broad investigative powers, in violation of Rule 6(e). Second, defendant contends that disclosure of grand jury evidence to the IRS following conclusion of the grand jury proceeding violated Rule 6(e). In *In Re Gruberg*, 453 F.Supp. 1225 (D.C.1978), the Ulster Electric Supply Company moved to quash the initial subpoena served by the grand jury investigating this case on grounds, among others, that the "open-ended" grand jury referral procedures permitted "federal prosecutors to use

---

measured using a cutoff figure of areas with a population of less than 2,500 persons. These decreases are again similar or identical to the 6

juror in 60 decrease found acceptable in *Gottfried, supra.*

the grand jury to conduct an IRS administrative investigation"; that the procedure violated limitations on the investigatory powers of the IRS "by usurping the special investigatory powers of the grand jury," *id.* at 1230; and that Assistant United States Attorney Patterson disclosed matters occurring before the grand jury to IRS agents, *id.* at 1233. Judge Haight rejected these claims, finding that "all the indications in the record are to the effect that the grand jury is concentrating solely upon an investigation of criminal offenses." *id.* at 1232, and that disclosures of the Assistant United States Attorney, Mr. Patterson, to the IRS fell precisely within the class of disclosures permitted under Rule 6(e)(2)(A)(ii).[12] Defendant Ronder has alleged no additional facts which would support a reconsideration of the issue of the propriety of IRS referral of the investigation to the grand jury or which would indicate that any subsequent disclosures by Mr. Patterson to the IRS of matters occurring before the grand jury would not also fall within the provisions of Rule 6(e)(2)(A)(ii). Accordingly, this motion is denied.

### 5. *Improper Disclosure of Matters Before Grand Jury*

Defendant Ronder further alleges that Government attorneys and agents investigating this case improperly disclosed matters occurring before the grand jury to Charles Simmons, an attorney previously retained by Ulster Electric Supply Company in connection with the investigation, and to Mr. Simmons' attorney, in violation of Rule 6(e), F.R.Crim.P. Defendant does not state any factual basis for this allegation. The affidavit of Assistant United States Attorney Patterson states that no such improper disclosures have been made. On this record, the Court can find no basis for dismissing the indictment on grounds of improper disclosure of matters occurring before the grand jury. The motion is denied.

### 6. *Lack of Competent Evidence*

Defendant next moves to dismiss the indictment on the grounds (1) that it was not supported by competent evidence and (2) that it was the result of prosecutorial misconduct. In support of this motion, defendant alleges upon information and belief that Charles Simmons, in breach of the confidential relationship existing between Simmons and defendant Ronder, induced defendant to make inculpatory statements and reported such statements to Government attorneys and agents and to the grand jury. In opposition to this motion, the Government asserts that no statements by or evidence obtained from defendant were presented to the grand jury (affidavit of Assistant United States Attorney Patterson), and that as a matter of law, defendant may not challenge a facially valid indictment for lack of competent evidence before the grand jury.

The Court finds that defendant's first argument is in fact foreclosed as a matter of law. See *United States v. Schlesinger*, 598 F.2d 722, 726 (2nd Cir. 1979), citing *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (" 'An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for [a] trial of the charge on the merits' "). In addition, defendant has not made a factual showing sufficient to support either the first or the second part of this motion. The motion is therefore denied.

### 7. *Inspection of Grand Jury Minutes*

Defendant next moves for an order permitting him to inspect the grand jury minutes under Rule 6(e)(2)(C), F.R.Crim.P. The basis for this motion is identical to the basis for the motion to dismiss the indictment for lack of competent evidence: that the grand jury may have been presented with statements illegally obtained from the defendant. On this record, defendant has not made the showing of particularized

---

**12.** Currently Rule 6(e)(3)(A)(ii)

need necessary to support an order to disclose. *United States v. Weinstein*, 511 F.2d 622, 627 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *United States v. Leonelli*, 428 F.Supp. 880, 883 (S.D.N.Y.1977). This motion is also denied.

8. *Discovery*

Defendant has made a broad motion to discover material in this case. The Government maintains that it has made available to defendant all the material covered by the defendant's discovery request. Since the defendant has not further specified any particular discovery dispute, there is no basis upon which this Court may make a ruling on this motion at this time. Decision on this motion is therefore deferred, pending transfer to the Northern District.

9. *Motion to Suppress*

Defendant next moves to suppress (1) evidence obtained from defendant Ronder after he became a target of the investigation but before being advised of his status as a target, and (2) any statements made by Charles Simmons. As to part (1) of this motion, the Government states that two interviews took place with defendant Ronder and defendant's attorney; that at the time of the first interview, the Government had no information implicating defendant in the matter under investigation; that prior to the second interview, the Government informed defendant's attorney that the Government had obtained information implicating defendant in the matter; that at the time of the second interview with defendant and defendant's attorney, Ronder was not yet a "target" in the sense that a decision had been made to indict the defendant; and that no legal ground exists for suppression solely on grounds that defendant Ronder was a target of the investigation where the defendant was interviewed with counsel present, even if defendant had been interviewed after he became a target of the investigation. Defendant has disputed the Government's assertion with respect to the date on which defendant Ronder became a target of the investigation. The basis for the second part of this motion is unclear, but appears to rest on the factual issue of whether or not Mr. Simmons acted at any time as defendant Ronder's attorney. While the first part of this motion may be barred as a matter of law, *cf. United States v. James and Sebold*, 609 F.2d 36, at 40–41 (2d Cir. 1979), since the case is to be transferred to the Northern District, and since resolution of this motion may require a factual hearing, which may more properly be held by the transferee court, this Court will defer decision on the motion pending transfer of the case to the Northern District.

10. *Motion to Take Depositions*

■ Finally, defendant Ronder has moved to take the depositions of former co-defendant Gerald Gruberg, Charles Simmons, and Grace Ede under Rule 15, F.R. Crim.P. Defendant has not specified the basis for this motion. Rule 15 permits a defendant to take depositions of his own witnesses when "due to exceptional circumstances," such as the potential unavailability of the witness at trial, the taking of such depositions is in the interests of justice; depositions are not allowed "merely for the purpose of discovery." *United States v. Rich*, 580 F.2d 929, 933–34 (9th Cir. 1978), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1979). Defendant here has not made a showing which would satisfy the requirements of Rule 15. Accordingly, the motion is denied.

*SUMMARY*

For reasons stated above, defendant's motion to transfer is granted, his motion to dismiss the indictment under 28 U.S.C. § 1867 is denied without prejudice, and his other motions to dismiss the indictment, to inspect the grand jury minutes and to take depositions are denied with prejudice.

SO ORDERED.